No. 10,906.

SUCCESSION OF WIDOW BERTRAND SALOY.

The public administrator has no standing in court to ask the nullity of the appointment of administrators made after the observance of all the forms of law, and seek his own appointment instead, because the deceased was an adulterous bastard who left no issue, no surviving husband and no will, and the parties claiming the estate are adulterous collaterals who can not inherit.

The State has a right to institute judicial proceedings to revendicate the succession of a person who dies without heirs. The action arises under express provisions of law.

The State would have such right, in the case of the succession of an adulterous bastard, leaving no legitimate or natural issue, no surviving husband and no will, which is claimed by adulterous collaterals, upon legal proof of the adulterous relationship of the parties.

The only evidence which the law allows to be introduced in such a case is a valid judgment, upon proper proceedings, obtained by the husband, or in his default his heirs, under the circumstances and within the period prescribed by law.

1. The right to institute an action, *en desaveu*, to repudiate children, born during the marriage, is exclusively personal to the *husband*, who is the sole judge of his honor and of the propriety of bringing it.

2. Where the husband, or his heirs, fail to institute such suit the door for the contestation is forever closed, the *status* is irrevocably acquired and fixed so that it can be thereafter questioned by *no one*.

3. The State has not been declared by the Legislature to be vested with the right of bringing the "*public action*." Such right can not be exercised, unless formally recognized and announced by law, and then only for the purposes designated and in the cases specified. In the meantime it is a dormant attribute.

4. The State, whatever her governmental prerogatives or police powers be, has no right, in the absence of a formal expression of the legislative will, declaratory of the same, to any action to vindicate laws enacted for the preservation of public order, or of good morals.

5. In an action brought by the State to exclude adulterous bastards from a succession, where the persons represented to be such were born *during* marriage, it is essential to allege and prove that their adulterous character has been judicially pronounced by a competent court, and that the judgment has acquired the force of sovereignty.

44　433
47　1324

44　433
51　1340

44　433
113　839
113　843

44　433
f120　738

44　433
e122　204
122　205

APPEAL from the Civil District Court for the Parish of Orleans.
Rightor, J.

*Thos. J. Semmes, Drolla & Augustin* and *Buck, Dinkelspiel & Hart* for the Administrators, Appellees:

1. The public administrator has no right to provoke the removal of an administrator. 34 An. 728. Nor to annul a decree so that he may administer. 26 An. 162.

28

2. The State can not bastardize the offspring of a married woman. The child of a married woman is presumed to be the child of the husband, and this presumption can only be destroyed by a decree rendered in an action *en desaveu*, which action can be brought by no one but the husband and his heirs, as prescribed by Arts. 191 and 192 of the Civil Code, nor can the presumption of paternity be attacked by the husband or his heirs, except in the cases where the presumption of paternity as an incident of the marriage is allowed to be disputed under Arts. 185, 186, 187, 188, 189 and 190. Case of Eloi, Rob. 531; Dejol vs. Johnson, 12 An. 854; Journal Du Palais, 1864, p. 329 and of 1866, p. 1252; 2 Toullier, Nos. 895-6; 5 Demolombe, No. 235; 6 Aubry and Rau, p. 62, Sec. 545; Marcade sur l'article 319; Laurent, Vol. 1, p. 311.

3. The acknowledgment of an incestuous or adulterous child of a married woman can have no effect for or againt him. J. P. 1876, p. 893; Id. 1879, pp. 579, 580 and 584; Id. 1859, p. 707; Id. 1865, pp. 327 and 756; Id. 1686, p. 327; 5 Demolombe, No. 96; 3 Duranton, Nos. 115-138; 1 Laurent, p. 311.

4. A child of a married woman can not repudiate his own legitimacy. 5 Demolombe, Nos. 70 and 126.
    Nor can the mother. 5 Demolombe, No. 154; 2 Toullier, No. 835; 3 Duranton, No. 77; Aubry & Rau, Vol. 4, p. 584; 3 Partidas, Tit. 14, L. 9.

5. A child of a married woman can not be bastardized except by a decree of justice in an action *en desaveu* brought against him by the husband or his heirs. Mourlon, Vol. 1, pp. 449 and 438, No. 867; Demolombe, Vol. 5, Nos. 113, 114 and 115; 6 Aubry & Rau, Sec. 545, p. 523; 3 Laurent, No. 77; Marcade, sur l'article 317, p. 386; 1 Mourlon, p. 452; 1 Laurent, p. 317, No 273.

6. The delay of two months, within which the action *en desaveu* is to be brought by the husband or his heirs, is not a prescription, but at the expiration of the time the right is extinguished. 5 Demolombe, No. 139.

7. Collaterals who have recognized in a child born of a married woman the quality of a legitimate child are not allowed to afterward contest his legitimacy. Code Sirey Gilbert, Note sur Art. 319.

---

*Walter H. Rogers*, Attorney General, for the State, and *Chrétien & Suthon* for the Public Administrators, Appellants:

1. An adulterous bastard can not transmit to nor inherit from ascendants or collateral heirs. C. C. Arts. 238, 917, 920; C. N. 723, 767; Succession Fletcher, 11 An. 59

2. The State has a double interest in intervening here: (*a*) pecuniary, as heir; (*b*) governmental, asserting her police power. C. C. Arts. 200, 204, 206; C. N. 335, 338.

3. This can not be called an action *en desaveu de la paternité*, but is a contestation d'état, or a question d'état, raised by one having an interest in a case where no presumption *pater is est* applies, because the *titre de naissance* shows the status of natural children. Demolombe, Vol. 5, Nos. 101, 109, 127; C. N. 319; C. C. 193; Toullier, Vol. 1, Nos. 898, 899, 900; C. N., Art. 322; Toullier, Vol. 2, No. 920.

4. The charge of fraud in the matter of averment and proof is admitted by the exception to be true.

---

*Girault Farrar* and *Wynne Rogers*, Special Counsel for the State.

---

*B. C. Elliott*, Attorney for absent heirs.

The opinion of the court was delivered by

BERMUDEZ, C. J. The transcript contains several judgments which are brought up for review.

## I.

The widow of Saloy having died intestate, a contest arose for the administration of her succession, and two administrators were appointed, who took the oath and furnished the bond required by law.

After these administrators had taken possession of the estate and entered upon the discharge of their functions, the public administrator brought suit to have the appointments vacated and himself appointed administrator of the succession.

The grounds upon which he relied are, that Widow Saloy died intestate, leaving no legal heirs; that the parties who claim to have inherited her estate are adulterous collaterals who are disqualified by law; that the appointments were obtained in *fraud* of the law.

After hearing on an exception of no cause of action, the petition of the public administrator was denied. From the judgment thus rendered, he appeals.

In the Succession of Winn, 26 An. 162, the then court held, that the public administrator has no right to interfere in a succession not vacant, in which the executrix had qualified and had not been removed and no creditor had asked for her destitution.

In the succession of Burnside, 34 An. 728 (731), the right of the public administrator to ask for the removal of an executor, for the reasons charged, was considered and the court held, that he had no authority to provoke the removal of the executor, who was discharging his duties.

It said: "His power to act arises only in the cases provided by the law which created his office. The utility of his office arises according to law, and his services are required only when a succession is not being administered at all. His office was intended to fill a vacancy, but he has no power to provoke a vacancy. * * * This right can be exercised only by his heirs, legatees, or creditors." C. P. 1018. The ruling in the Succession of Winn, 26 An., is referred to with approval.

It does moreover appear that, even if the public administrator would have raised lawful aspirations to the administration of a succession like the present one, he should have made them known, as-

serted them after the publication of the first application had been made and engaged with the others in the contest for the administration. It was surely too late, after the appointments had been conferred and the appointees qualified.

The lower court ruled correctly.

## II.

It appears that certain parties claiming to be the nearest collateral relatives and the only heirs of Widow Saloy were recognized as such by the court and ordered to be put in possession of the property left by her.

The State of Louisiana then instituted proceedings to have the judgment annulled on the ground that it had been fraudulently obtained; that the deceased left no legal heirs, and that, in the absence of such, her succession accrues to the fisc.

The grave charge is propounded that Widow Saloy was an adulterous bastard and that the parties in question are adulterous relations, incapable of inheriting.

The specific allegation is made that the mother of Mrs. Saloy, Dolores Morales, was the legitimate wife of Juan Gestal, of Cuba, whence she eloped with one Antonio Carcagno, settling in New Orleans, where they had three children, Marie Madeline, *Carmelite* and Antonio, who were conceived and born during the existence of said Gestal, who died only in 1842.

Several decrees and judgments rendered in the succession proceedings are complained of and their annulment is prayed for.

The parties appointed administrators and those recognized as the sole heirs of Mrs. Saloy, whose *status* and right of inheritance are assailed, as well as the attorney of absent heirs, are asked to be cited. The petition concludes with the prayer that the judgment attacked, recognizing the alleged heirs, be annulled, and that the State of Louisiana be declared to be the sole legal heir of *Carmelite* Carcagno, widow of Bertrand Saloy, and, as such, entitled to the residue of her estate after payment of debts and charges.

To this petition the defendants filed an exception of *no cause of action*.

After hearing, that defence was sustained and the claim of the State was rejected, with judgment in favor of the defendants. The State appeals.

The exception of *no cause of action* was considered as putting at issue the *right of action* of the State to institute the suit and it was dealt with accordingly.

There can be no doubt that under express textual provisions of the law the State has the right, in certain cases, to claim the succession of parties who die without heirs, or whose estates are not claimed by those having a right to them.

Art. 485, R. C. C., is formal on the subject. It reads: "The succession of persons who die without heirs, or which are not claimed by those having a right to them, belong to the State."

In the same sense is Art. 917, which reads: "When the deceased has left neither lawful descendants, nor lawful ascendants, nor collateral relations, the law calls to his inheritance either the surviving husband or wife, or his or her natural children or the State."

To the same effect is a following article, No. 929:

"In defect of lawful relations or of a surviving husband or wife, or acknowledged natural children, the succession belongs to the State."

It may not be out of place to observe that, under the provisions of Art. 923, it has been held that, when the father and mother of a natural child have died before him, the estate passes to the natural brothers and sisters, or to their descendants. 11 L. 181; 5 R. 9.

Being made an heir, in certain contingencies, it is clear that the State has a right to demand a judicial enforcement of the law in her favor.

This right has been admitted in more than one instance; but notably in the well known case of the succession of Henry Fletcher, 11 An. 59, in which the State successfully opposed the claim of a daughter of the deceased, on the ground that she was his adulterous child and could not inherit from him. V. also 12 R. 584; 6 An. 494.

This right is so well recognized that the State, in a proper case, may be allowed to institute even the action in disavowal (*action en desaveu*). Toullier, Vol. 2, No. 127.

It is enough that the State has a pecuniary interest to revendicate, to authorize the institution of the suit.

Had that interest no existence, the State would have no standing in court, in the absence of declaratory legislation, to assert a governmental privilege or police power, for the prevention or suppression of the violation of *civil* laws, enacted for the preservation of public order and good morals.

The right then to interfere must have previously been expressly announced and formulated.

No doubt the State inherently possesses the prerogative, as a dormant attribute of sovereignty, but her official representatives have no authority to assert and enforce it, when there exists no solemn expression of the legislative will, directing or sanctioning its exercise. It is not self-operative, and needs legislation to be put in motion.

The French authorities referred to in support of the proposition have no application here, where the power has not been announced by the legislative will; but they are of significance in France, where the right to institute, as *censor morum*, the "action publique" is formally thus recognized. V Pandectes Francaises Verbo "Action Publique." Also Répertoire J. P., Suppl. Compl., Ib.

There is to be found in France, however, no case, that we know of, in which the State has sought to exclude adulterous relations from a succession and was permitted to prove their *status* as such, otherwise than by a *judgment*, obtained by the proper party and reasonably declaratory of the fact of bastardy.

The dominant question nevertheless arises, whether the State can assert the bastardy of the pretended heirs, and claim the succession of the adulterous deceased bastard, without alleging that she possesses *such* evidence; for that is the case presented here, as, under the exception, the facts averred in the petition are taken for true, and that fact is not therein set forth.

Adulterous bastards are considered as having no relatives. *Nec genus, nec gentem habent.*

Domat says, Loix Civiles, 2d part, preface No. 12: The successions of bastards who die without legitimate children and without having disposed of their estates must be placed in the rank of those which accrue to the prince; for, under our usage, no one succeeds them *ab intestat* except their children, if they are legitimate, and they themselves succeed to others by testament only.

Dealing with the subject, Laurent, Vol. 9, p. 181, No. 153, says: The code does not speak of the succession of adulterous or incestuous children. The question must be decided according to general principles.

The adulterous or incestuous child can not be acknowledged and has, therefore, no natural relative, no father, no mother, no brother,

no sister. * * * He can have as his legitimate relatives the children born of his marriage, for, however maculated be his own birth it can not affect the condition of children born of a legitimate union. From this it is very easy to determine the order in which the estate left by an adulterous or incestuous bastard descends. It passes at first to his legitimate issue. * * * If there are only natural children they take the inheritance under Art. C. N. 758. In default of posterity there are neither natural nor legitimate relatives.

It was proposed to defer the succession to the father and mother; but it was not remembered that the unfortunate are legally without father or mother, as they have no filiation. * * * For the same reason they have neither natural brothers nor sisters, and there is no reversion or succession for their benefit. Remains the surviving spouse, and in his or her default the State.

See Zacharie, Ed. of Aubry & Rau, Vol. 4, p. 266, No. 10, and Demolombe, Vol. 14, p. 211, Nos. 136-138.

It is therefore apparent that the estate of an adulterous child who dies leaving no issue, legitimate or natural, and without having disposed of it by will, accrues to the State; but is it enough that the *crude* facts exist, to entitle the sovereign to take? Is he not bound to prove it, by legal evidence, establishing it beyond all peradventure? If so, what should that evidence be?

The exception of *no cause of action* does not say how or why the petition discloses no valid claim. The State did not demand any specification and it was tried on the face of the papers.

Exceptions of that description tend to the rejection of a petition, not only because the facts alleged, if true, would not warrant the judgment sought, but because the averments are insufficient.

From the manner in which the case was presented and argued it is manifest that the purpose of this exception was not so much to deny the *right* of the State to obtain the judgment sought as it was to deny that, *for want* of allegations which were not and could not be made, the State could not adduce *legal* evidence to substantiate them.

Had not the exception been filed, the defendants, after joining issue by answer, could, on the trial, have successfully objected to the introduction of any evidence in support of the averments, which would not have been strictly warranted by law.

The defendants, by the exception, may be viewed as having told

the State: You say that the three children were born from the adulterous connection of Dolares Morales with Antonio Carcagno, while her marriage with Juan Gestal was in existence; that one of them, *Carmelite*, having died without issue and *ab intestat*, the other, Marie Madeline, who is Mrs. Pons, and the representatives of Antonio, being adulterous collaterals, can not inherit, and that you, therefore, are called to her succession, which belongs to you.

You do not allege that those three children have, in an action brought by Juan Gestal, under proper averments and seasonably instituted, been *judicially* declared to be adulterous bastards.

Not having made that allegation, because the fact does *not* exist, you can not force us to a trial on the merits of the suit; you can not prove your averment of adulterinity and, failing in that, you can not recover the judgment of heirship which you seek.

To this the State answers: It was unnecessary to make the allegation because this is an action in contestation of legitimacy, on a charge of adulterous bastardy which can be proved, otherwise than by a judgment bastardizing the children, at the instance of the husband of their mother, or of his heirs.

The deceased was an adulterous bastard and you are her adulterous collaterals. She has died leaving no issue, no surviving husband, no will; you can not and do not inherit her estate, which, therefore, accrues and belongs to me, and I ask that it be so adjudged.

It would be cumbersome and subserve no useful purpose to enter into any elaborate inquisition to establish clearly what are actions in disavowal, actions in contestation of legitimacy, actions in reclamation and actions in contestation of *status*, and to enumerate the cases in which they *may* successfully be brought. The commentators and the courts which have hazarded a disquisition on the subject have ventured on a perilous enterprise and engaged in a labyrinth from which it has been difficult sometimes for them to extricate themselves. Insatiable aspirants after exhaustion of legal knowledge on those thorny subjects may be assisted in collecting notes, to serve as landmarks, by referring to the authorities alluded to, by the able counsel engaged in this controversy, in their elaborate briefs, and to those on which the ravenous commentators themselves, more or less, rely.

It will suffice to say that every action brought to contest the *status*

of a person is an action *en contestation d'etat*, which is of three kinds:

1. That by which one maintains that the presumption *is pater est quem nuptiœ demonstrant*, invoked for a child, born or conceived, *during* the marriage, is, as to him, contrary to truth.

2. That by which one maintains that the child is not legitimate, because his birth and his conception did not take place during the marriage of his mother, or because his mother was not married.

3. That by which one contests either the delivery of the mother or the identity of the child.

The action *en desaveu* belongs only to certain persons exactly determined, that is, the husband and his heirs. It belongs neither to the mother nor to her heirs.

This action is limited to a delay fatal and very short, after which it is extingnished by the renunciation, express or tacit, which is made by the husband or his heirs.

While the action *en contestation de legitimité* accrues to all persons interested, and consequently to the heirs of the mother and to the child himself, this action lasts always. It subsists notwithstanding any contrary renunciation. Mourlon, Vol. 1, p. 438. No. 867, and seq.

It is unnecessary to enter into any discussion as to whether the suit brought by the State is an action *en desaveu*, or one *en contestation de legitimité*, because it has the complexion of neither and the State expressly disclaims that it is either, contending merely that it is one *en contestation d'etat*.

Whatever its character be, it is clearly an action which has for its object to have it *judicially* declared that the deceased was an adulterous bastard and that the defendant, her sister and nephews and nieces, are adulterous bastards; that the deceased, having left no issue, no husband and no will, the defendants do not inherit and her succession belongs to the State.

The only question presented after all is one which relates to the nature of the proof or evidence of which the case is susceptible.

Can the State be permitted to resort to any evidence save the judgment in a case of disavowal? *That is the question.*

We have been referred to no authority showing that evidence of such a character was ever allowed, in order to bastardize children born *during* marriage, and we know of none.

In the succession of Fletcher, 11 An. 59, in which the State had charged the adulterinity of the daughter *claiming* the estate, the court allowed the State to introduce usual evidence, other than a judgment, but this was done because the daughter was the child of the deceased, a married man, by an unmarried woman and a slave. So there is no parity between the two cases.

The State takes the further position that the parties who pretend to be the sole heirs of the deceased, being *plaintiffs*, must make out their claim as was required in the Fletcher case, and that, as they have shown themselves to be *Carcagnos* and not *Gestals*, they have established their *status* as adulterous connections and therefore debarred themselves from inheritance.

This is a fallacy. These parties are not plaintiffs, as was *Marie Louise* in the Fletcher case.

The court there was particular in premising that she was not a *defendant*, but a *plaintiff*, on whom the burden of proof rested.

In the present instance the parties are not asking or claiming anything and have nothing to prove.

Whatever their *status* be, the State by this suit has forced them into the attitude of *defendants*, as she attacks them.

They are in possession of a judgment which is *their property*, emanating from a competent court which recognizes them as the sole heirs of the deceased.

The *onus* is on the State to show by strictly legal proof that they have procured it by fraudulent representations and practices, and the question reduces itself as to whether the State has at her command the evidence exclusively permitted in such cases, in which children born *during* marriage are gravely charged with being adulterous bastards, incapable of inheriting under the law.

The two cases, that of Fletcher and the instant one, are, therefore, in this further respect, entirely dissimilar.

There is no doubt that a husband, although he be presumed by law to be the father of the children born from his wife, *during* the existence of their marriage, has the indisputable right to repudiate them when they have not been begotten by him and are the spurious fruits of the adulterous intercourse of his wife with another man, but the cases in which he is permitted to go into the scandalous doings of his depraved consort, reeking with the odor of adultery, are specified with precision, and his action, and in his default that of his

heirs, are to be asserted within a limited delay. R. C. C. 184-192 inclusive.

The proceeding must be conducted contradictorily with the wife and with the child or children whose character and *status* are involved.

The law has made him the sole judge of the propriety of engaging in such a course, with a reserve of the right to his heirs of doing so, in the event of his death within the delay. He is the only one who perhaps can know that he is not the father.

When, aware of the circumstances under which he might have exercised the right of repudiation, the husband, who is the sovereign arbiter of his honor, fails to do so, the door is forever closed and *no one* can afterwerd assert a right strictly personal to him.

Permitting such thing would be to strike a heavy blow at the sacredness of family ties, keep the honor of the wife and of the children in a condition of constant trepidation and allow the foundation of society to be, at all times, exposed to tottering and upturning. *Status hominum in perpetua incertitudine fluctuaret.*

The sanctity with which the law surrounds marital relations and the reputation and good fame of the spouses and of the children born during their marriage is of such inviolability that the mother and the children can never brand themselves with declarations of adultery, illegitimacy and bastardy, and their character is not permitted lightly to be thus aspersed, however true in themselves the stern and odious facts may unfortunately be.

This doctrine has long ago been recognized in this State.

In the two cases of Eloi vs. Madere, 1 R. 583, and of Dejol, 12 An. 854, the then Supreme Courts expressly recognized and applied it, holding that, where the husband has failed to institute the action *en desaveu*, under the circumstances and within the period specified, the right to assail the legitimacy of the children born *during* marriage having become extinct and lapsed, it would be subsequently exercised by *no one*, and those asserting it were debarred from all action. See also, 7 M. N. S. 553; 6 An. 242.

But the converse of the proposition is true, that if the husband or his heirs have brought proceedings to bastardize children born *during* marriage, and have established the facts of the adulterinity (*adultérinité*) propounded, and a judgment has accordingly been rendered and has become final and executory, sovereign and absolute

to all ends and purposes, any one having an interest to promote, growing out of the fact, judicially established and proclaimed, may use the proceeding and the *judgment* successfully for the purpose of establishing the adulterous character.

. Had, therefore, such judgment been procured in this instance the State could have used it; and, by its operation, would have silenced the voice of the blood which the defendants have raised to possess themselves of property left by a collateral whose forehead has not been branded with infamy.

From the fact that such judgment has not been alleged; that its existence is not even whispered, the unavoidable conclusion is that it has *no* being, and therefore that the State is unprovided with the only legal evidence by which her case was susceptible of proof, and that she must fail in her action.

It is therefore ordered and decreed that the judgments appealed from, rejecting the application of the public administrator and the demand of the State, be affirmed with costs; and considering that the State has no interest in contesting the validity of the other judgments from which she has appealed it is ordered that said appeals be dismissed.