BREAUX, C. J.
In view of the finding of fact here and before the appeal was taken in the district court, and the weight of the authorities pertinent to the issues, we can think of no ground that would justify us in setting aside the judgment.
We take up in the first place for review the facts.
The late Mrs. Louise Ledet died intestate on the 4th day of March, 1907.
Ferdinand Ledet, applicant for the administration of her succession, alleging that he is her son, on the 8th day of March, 1907, addressed a petition to the court, averring that his mother departed this life on the day before stated; that he is her only offspring, sole heir; that the appointment of an administrator is necessary.
The brothers and sister of Louise Ledet interposed oppositions to the petition; they denied that Ledet is the son of their sister.
To prove his heirship, Ledet produced a certificate of baptism in due form issued by one of the churches, and rested his case. Whereupon witnesses for the opponents sought to impeach the verity of this certificate by verbal testimony. The testimony made up a strong case. Witnesses testified that they had known the deceased years before and after the birth of Ferdinand Ledet, and were positive that he is not her son.
The disputes between Louise Ledet and her husband, Marcelin Ledet, and their separation, give strong support to the testimony.
There was also a suit for separation from bed and board brought some time before the birth of Ferdinand Ledet. The evidence does not prove that this suit ever culminated into a judgment. There was a voluntary separation, but no judgment of divorce or from bed and board.
Ledet must have been known in the city of New Orleans. He became consul from this country to' Tuxpan in Mexico.- It is not probable that he was entirely lost sight of and forgotten after he left New Orleans in the seventies.
Opponents’ contention is that owing to his permanent absence it Is not possible to arrive at the conclusion that he was the father of the child. The witnesses have testified at some length upon the subject, all to show that he was not the father, and to have it appear that he never returned to the city of New Orleans.
Despite this testimony, it is not positively shown that he at no time returned in the *203 year 1883, the year of the birth of Ferdin- and Ledet, .the applicant. There is evidence going to show that he did return, though it may have been for a very limited time and not in the year 1883.
We return for a moment to take up the effect to be given to the certificate of baptism. It has more than the usual weight in this case, by reason of the fact that the godmother of Ferdinand Ledet testified that she held the child as godmother at the baptismal fountain; that the mother of the child, Louise Ledet, was present, and the child was christened as the issue of her marriage with her husband, Marcelin Ledet.
Again, in corroboration of this certificate and of the maternity of the child, years afterward the name of Ferdinand was carried on the roster of the pupils of one of the public schools as the son of Louise Ledet.
Some of the witnesses for the opponents, as well as some of the opponents themselves, sought to make it appear that Ferdinand Ledet is not the son of Louise Ledet. They stated that a midwife promised a child to the late Louise Ledet, and that in accordance with the promise this midwife brought this child and delivered it to Louise Ledet, who reared and treated him as her own.
This story is wanting in truthful details; it has all the appearances of a made-up story. The midwife is dead; there is nothing save bare statement of witnesses toward sustaining this story. To be brief, the story is not convincing. Children are not thus bom and disposed of by midwives or by those who perform the office of a midwife.
A number of witnesses for the applicant, contrary to those who have testified for the opponents, have testified regarding the maternity of Ferdinand Ledet. They expressed themselves in positive terms on the subject. They asserted emphatically that he is the son of Louise Ledet. Old men and old women remember instances making up a consistent chain of testimony beginning at a time before the birth and continuing to the day of the death of Louise Ledet; and, even after her death, there were opponents who addressed him as her son.
While the testimony of opponents, as before stated, is positive, the testimony of witnesses for the applicant is equally so. Weighing the two, we are of the opinion, to say the least, that the effect of the certificate of baptism is not destroyed by the-contradicted testimony of witnesses for the opponents. This certificate is entitled to' due weight. The baptism was administered, as we have stated before, in the mother’s presence, with her consent. It is also-a significant fact that the status of the offspring Ledet, who is about 24 years of age, was never attacked until recently after the mother’s death.
The filiation of a legitimate child may be shown by a copy from the registry of birth, kept according to the usage of the country. Civil Code.
It is unquestionably true that the applicant’s birth dates after the marriage between Marcelin Ledet and his wife, Louise. And further, it does not appear that the husband ever disowned the child.
Having considered the facts: In reviewing some of the points of law, we come in the first place to a consideration of the decision in the Succession of Saloy, 44 La. Ann. 433, 10 South. 872.
The contention of learned counsel for opponent as relates to this decision is that it has no application, and that if it be held to have application at all the decision is erroneous, and contrary to the express articles of the Revised Civil Code, and especially article 974, in which it is provided that the exclusion for cause or incapacity or unworthiness of ’ the heir cannot be obtained by' others than the relatives who are called to the succession in default of the unworthy *205 heir; and, further, following in the Code, that proof against the legitimate filiation may be made by evidence that plaintiff is not of the maternal or paternal defense to which he pretends; and, still following in the Code, that these suits are to be determined in the same manner as other civil actions.
Keturning to the first ground, to wit, that the decision is not pertinent. We think that it is not only pertinent, but that it goes further than needful in order that the applicant may sustain his case. In order to hold that it is not pertinent, it would be necessary to go counter to the plain meaning of the' text, as will be seen by the following:
“The right to institute an action en desaveu is a personal right in which the heirs have no concern.” Succession of Saloy, 44 La. Ann. 433, 10 South. 872.
Having found it pertinent, we will apply ourselves for a moment toward ascertaining if there is any necessity in this case to hold that it is erroneous, the second objection of learned counsel for opponents, as above stated.
We are not of opinion that it is necessary to so decide, for the judgment here should be sustained even if the cited decision went too far.
We will avail ourselves of the opportunity to state here that we held recently in the case of Ezidore v. Cureau’s Heirs, 113 La. 839, 37 South. 773, that as the evidence was that the child was conceived and born during marriage, and was not disavowed by the husband during his lifetime, the status of legitimacy is fixed.
We, therefore, leave these decisions as they are, and continue our inquiry satisfied that in this case the applicant’s cause is far stronger than was the case of the heirs seeking to have the illegitimacy decreed in the cited cases.
We will state before leaving the cited decisions that the question heretofore debated was whether the husband knew of the shame of his wife, and, despite his knowledge, took no step to disavow the child. In such a case could the collateral t¡eirs question the legitimacy and accomplish ‘that which the husband had declined to undertake? In such a case it was held that the silence of the husband was binding upon all others; that with him the right spoken of began and fell.
To illustrate by a plain instance: If a husband were to leave some distant shore in Asia and were to come to this country, leaving his wife .behind, and 10 or 12 years after the wife’s absolute separation she were to give birth to a child, the questions which would arise would doubtless be considered despite the decisions that have been rendered, for it is a matter of grave doubt as to whether it was ever intended to go that far.
But here the question is different. The question of paternity and filiation must be held fixed, for it is not shown with absolute certainty that the husband did not return to this country in the year 1883, the year •in which Ferdinand Ledet was born. He was in Mexico at no great distance from the American frontier; he must have had acquaintances here where he had lived for .a long time. There never was a word uttered by him to show that he disavowed the child. Taking the two together, the fact that he may have been present in the city of his former home (indeed, some of the testimony does show that he came here), and the other fact that he remained silent in regard to the applicant, lead us to the conclusion that the opposition must be denied, as before stated, and the judgment affirmed.
For reasons stated, the judgment is affirmed.