of paragraphs 671 and 672, Marr's Criminal Jurisprudence. The judge says:

"As to this bill, there was no special charge handed the court prior to the general charge. * * * The court refused to read Section A Paragraphs 671 and 672 of Marr's Criminal Jurisprudence of Louisiana, because it had already covered the law in its general charge to the jury, as will be seen by the charge given in the matter."

The general charge is not in the transcript, but the charge as to circumstantial evidence, which the judge says he gave, is found in the court's per curiam to this bill. We have read it carefully and approve it as being an accurate statement of the law.

### Bill No. 21.

This bill presents the same question we have disposed of in our rulings upon bills 16 and 17.

### Bill No. 22.

This bill was reserved to the overruling of a motion for a new trial. The motion is based upon the alleged insufficiency of the evidence to support the verdict. The ruling is correct.

For the reasons stated, the verdict and sentence are affirmed.

141 So. 862

### BEARD et al. v. VINCENT et al.
### No. 31581.

April 25, 1932.

Edwin F. Gayle, of Lake Charles, for appellants.

Pujo, Bell & Hardin, of Lake Charles, for appellees.

BRUNOT, J.

The plaintiffs are the collateral heirs of Mary Sellers Meehan, who died intestate, leaving an estate consisting of property she

inherited from her predeceased son, William J. Meehan.

The petition alleges that the defendants are in possession and claim the ownership of the property as half brothers and sisters of William J. Meehan, but that they are the illegitimate issue of an illicit relation between Mary Sellers Meehan and Armogene Vincent, and were conceived at a time when Mary Sellers Meehan was the lawful wife of William D. F. Meehan, and Armogene Vincent was the lawful husband of Emma Lyons. They pray for judgment recognizing them as the true and lawful owners of the property, entitled to the full possession thereof, and ordering the defendants to deliver possession of the property to them.

The defendants first filed an exception of no right of action and want of interest in the plaintiffs. The principal allegation in the exception is: "That under articles 184 to 192 of the Civil Code, the plaintiffs are without right to contest the legitimacy of the defendants." A motion to have this exception stand as an answer was filed, heard, and overruled. Plaintiffs then filed a plea of estoppel, and defendants filed an exception of no cause of action.

On these several pleas the case was finally submitted and judgment was rendered sustaining both of the defendants' exceptions, overruling the plaintiffs' plea of estoppel, ordering the cancellation of a notice of lis pendens which had been inscribed upon the public record, and taxing the plaintiffs with the court costs. Plaintiffs appealed from the judgment.

District Judge Jerry Cline has written a learned, accurate, and well-considered opin-

ion in this case which we think deserves a place in the printed volumes of this court's reports. For that reason we adopt it as our own.

The judge says:

"Before trial of the exception, the plaintiffs filed a plea that the defendants are estopped to allege themselves to be the heirs of William F. D. Meehan, for the reason that on August 6, 1902, in the Succession of William J. Meehan, they appeared in this court as his half-brothers and half-sisters, and as the issue of the alleged marriage between Armogene Vincent and Mary Sellers Meehan, and that on April 6, 1921, they provoked the probation of the will of Armogene Vincent, and later, under sworn petition, to be recognized as the sole issue of the marriage of Armogene Vincent and Mrs. Mary Vincent, born Sellers, his predeceased wife, were sent into possession of property left by Armogene Vincent, valued at more than $12,000.

"The exception and the plea of estoppel were tried and submitted together, and are now before the court for determination, along with an exception of no cause of action, filed by the defendants at the conclusion of the trial of the first exception and the plea of estoppel.

"The evidence supports the allegations of the exceptors that they, as well as William J. Meehan, were conceived and born during the existence of the marriage of their mother with William F. D. Meehan. It also establishes the averments of the plea of estoppel, namely, that defendants have judicially declared themselves to be the issue of the marriage between their mother and Armogene Vincent. The relationship of the plaintiffs to

Mary Sellers Meehan was proved on the trial of the exception of no right, and is taken as true in considering the exception of no cause.

"The plaintiffs ostensibly direct their attack on the legitimacy of the defendants, not at the quality of their mother, but at the quality of their father, Armogene Vincent; that is, they charge that, at the time he is alleged to have become the father of the children of Mary Sellers Meehan, he himself was the husband of another woman. Nevertheless, if, as contended by the defendants and exceptors, none but their mother's husband has the right to question their paternity, it follows that the exception of no right and of want of interest must be sustained, unless the defendants are estopped from urging it.

"The relationship of father and child is treated in title VII of the Civil Code. The second article of that title declares that, 'Legitimate children are those who are born during the marriage,' and the third article declares that, 'Illegitimate children are those who are born out of marriage.' Arts. 179, 180.

"Article 184 creates a legal presumption when it further states that the husband of the mother is considered as the father of the children conceived during the marriage. This presumption ceases in certain cases mentioned in subsequent articles; but in all cases, where the presumption ceases, the husband must contest the legitimacy, within two months of discovery of the fact, or thereafter be barred from making any objection to the legitimacy; and, if he die within the time limited, his heirs may contest the legitimacy within two months of disturbance by the child of their possession of the father's estate. C. C. 191, 192.

"There is no allegation or proof in this case that the husband of the mother of the defendants contested their legitimacy within the period limited by law; and, since he himself lived beyond the expiration of that period, it must be determined whether the question of legitimacy is forever foreclosed by his failure to act.

"The earliest case in our jurisprudence on the presumption of fatherhood is Tate v. Penne, 7 Mart. (N. S.) 548, where it was found that the presumption that the husband was the father of the child born during the marriage had not been overthrown, because it had not been shown that access had been impossible, although its improbability was established. While in that case the mother herself attacked the legitimacy of her child, her right to do so was not raised or passed upon by way of exception; but it was said by the court on the merits that the attack could not avail her, 'for, admitting that she was legally married to Sims at the time Delphine was born, the consequence would be that Delphine was the daughter of Sims.'

"Eloi v. Mader, 1 Rob. 581, 38 Am. Dec. 192, is a case in which a son of J. B. Eloi and Marie Fonteneau attacked the legitimacy of a son alleged to have been born to them before their marriage, and while Marie Fonteneau was the legal wife of Joseph Smith. The court said:

"'The plaintiff having been born during the first marriage, Joseph Smith, his lawful father, could alone, under particular circumstances, dispute his legitimacy. Not hav-

ing done so, although he survived the birth of the plaintiff much longer than the time prescribed by article 210 of the Civil Code, it is not competent either for the defendant, or the intervenors, to raise the contest now. The right to disavow and repudiate a child born under the protection of the legal presumption, pater is est, is peculiar to the father, and can be exercised only by him, or his heirs, within a given time, and in certain cases. If the father renounces the right expressly, or tacitly, it is extinguished, and can never more be exercised by any one.'

"In Dejol v. Johnson, 12 La. Ann. 853, forced heirs opposed the tableau of distribution in his succession, on the ground that one of the distributees was not the child of their mother's husband. The judgment of the lower court was approved in this language:

" 'On the opposition to the proposed distribution, the judgment was clearly correct. The appellants offered witnesses to traduce the character of their own mother by showing that she abandoned her husband, their father, and lived so remote from him when she conceived the children whose claims they oppose, that cohabitation with him was physically impossible; they also offered to show that these children were adulterous bastards alleged to be such by their father and openly acknowledged to be such by their mother; all of which evidence was rejected by the court, on the ground that the father had never legally contested the legitimacy of these children, as required by the Article 210 of the Civil Code, and that the delay for doing so had expired before his death, so that his heirs were by the Article 211 debarred from raising the controversy now.'

"In Ezidore v. Cureau, 113 La. 839, 37 So. 773, it was alleged that a minor was the issue of Eugenia Jackson and Henry T. Brady, who lived together in open concubinage for many years, and who were married at the deathbed of Eugenia. The evidence was excluded for the reason that it appeared from the pleadings, was undisputed, that Emma (Eugenia) Jackson was married to Sidney Cureau in 1893; that he died in 1902; and that she died in 1903; that the child was born during the existence of the marriage; and that the legitimate status of the child could not be contested, since her father had failed to do so within the time prescribed by the Code.

"The leading case on the question involved here is perhaps the Succession of Saloy, 44 La. Ann. 433, 10 So. 872, 875. In that case certain parties were recognized as collateral heirs of Widow Saloy, and placed in possession of her estate. The state of Louisiana then instituted proceedings to annul the judgment, on the ground that she was an adulterous bastard, and the parties adulterous relations, incapable of inheriting. After holding that adulterous bastards have no relations, and that the state is entitled to their succession, the court proceeds to determine whether the petition set up a cause of action.

"The petition asserts that the deceased left no legal heirs; that her mother, Dolores Morales, was the legitimate wife of Juan Gestal, of Cuba, whence she eloped with one Antonio Carcagno, settling in New Orleans, where they had three children, Marie Madeline, Carmelite, and Antonio, who were conceived and born during the life of said Gestel. There was no allegation that the hus-

band ever instituted proceedings attacking the legitimacy of the three children.

"Under these pleadings, the exception of no cause was sustained, and the suit dismissed. Remarking that, whatever might be the character of the action, its object was to bastardize the defendant and her brothers and sisters, Chief Justice Bermudez said:

"'Can the state be permitted to resort to any evidence save the judgment in a case of disavowal? * * * We have been referred to no authority showing that evidence of such a character was ever allowed in order to bastardize children born during marriage, and we know of none.'

█ "The court goes on to say that, in certain cases which are precisely limited, the husband is permitted to go into the scandalous doings of his wife, and to contest the paternity of her children born during the marriage; but the proceedings must be conducted contradictorily with the wife and children; and, if the husband fails to exercise the right of repudiation, the door is forever closed, and no one can afterward assert a right strictly personal to him.

"Other cases in our jurisprudence holding with those already cited are, McNeely v. McNeely, 47 La. Ann. 1321, 17 So. 928; Succession of Braud, 170 La. 411, 127 So. 885; and Succession of Flynn, 161 La. 707, 109 So. 395. In the latter case, as in this, collateral heirs sought to attack the legitimacy of a child of its deceased· mother. It appearing that the mother obtained a judgment of separation from bed and board from her husband, one Henry, on April 16, 1884, that the child was born November 9, 1884, and that the husband had brought no action to disa-

vow paternity, the suit was dismissed for want of cause of action.

"The reason and foundation for the rule of law thus stated so clearly, positively, and unanimously is well expressed by Chief Justice Bermudez, in the Saloy Case, thus:

" 'Permitting such thing would be to strike a heavy blow at the sacredness of family ties, keep the honor of the wife and of the children in a condition of constant trepidation, and allow the foundation of society to be at all times exposed to tottering and upturning. Status hominum in perpetua incertitudine fluctuaret.

" 'The sanctity with which the law surrounds marital relations and the reputation and good fame of the spouse and of the children born during their marriage is of such inviolability that the mother and the children can never brand themselves with declarations of adultery, illegitimacy, and bastardy, and their character is not permitted lightly to be thus aspersed, however true in themselves the stern and odious facts may unfortunately be.'

"It will be seen that so paramount is this reason found to be, that not even the mother of the children can ever brand themselves with adultery or bastardy. The same principle has been stated and enforced in a number of cases. In the Eloi Case, the petitioner alleged himself to be the child of another than his mother's husband, but subsequently declared the allegation to be in error. The court said the error was harmless, since he could not, in any event, be permitted to deny that he was the son of his mother's husband.

██ "It is true that judicial confession is full proof against him who made it. C. C.

art. 2291. But, if he be prohibited by the highest considerations of good order and public policy from making such confession, it could not be contended seriously that it had the least effect. The same considerations which prohibited it will ignore it as never having had an existence.

"It is urged, however, that the estoppel in this case is not only one by judicial declaration, but also in pais, for the reason that the defendants profited by taking property as legitimate heirs of Armogene Vincent, as well as of their mother and their natural half-brother. The answer is that the plaintiffs have not suffered disadvantage by either inheritance. As to the property of Armogene Vincent, the plaintiffs, of course, had no interest; and, as to the property of Mrs. Mary Sellers Meehan and William J. Meehan, the defendants take no more in their capacity as legitimate children of their mother and William F. D. Meehan than they claimed in their supposed capacity as the legitimate children of their mother and Armogene Vincent. Irion v. Knapp, 132 La. 60, 60 So. 719, 43 L. R. A. (N. S.) 940.

"These considerations require the sustaining of the exception of no right and no cause, and the overruling of the plea of estoppel.

"It is therefore ordered, adjudged, and decreed that the defendants' exception of no right and no cause of action and want of interest be sustained; that plaintiffs' plea of estoppel be overruled, and that, accordingly, the suit of the plaintiffs be, and it is hereby, dismissed, and the notice of lis pendens recorded in Mort. Book 107, page 129, be canceled at their cost."

For the foregoing reasons, the judgment appealed from is affirmed at appellants' cost.

ODOM, J.

I dissent, I think the plea of estoppel should be sustained.