HAMITER, Justice.
 

 In the Juvenile Court of the Parish of East Baton Rouge Ethel Lee Bolden, the mother of a two year old child named Peggy Ann, filed an affidavit in which she charged that the defendant, Shep Randall, had unlawfully and intentionally failed, refused and neglected to provide the proper support for such child, the latter being in necessitous circumstances.
 

 
 *581
 
 The charge was made in conformity with Section 74, Title 14, of the Louisiana Revised Statutes of 1950, as amended by Act 164 of 1950, it reading in part as follows:
 

 “Criminal neglect of family is the desertion or intentional non-support:
 

 * * * * * *
 

 “(2)- By either parent of his minor child, whether legitimate or illegitimate, who is in destitute or necessitous circumstances. Solely for the purpose of determining the obligation to support, the court shall admit proof of paternity or maternity, or both.” LSA-RS 14:74.
 

 Of the defined offense of criminal neglect of family the defendant, after trial, was found guilty; and, as a consequence, the court imposed sentence in keeping with the penalty prescribed by the statute. Whereupon defendant appealed.
 

 In this court appellant relies on only one bill of exceptions, reserved during the course of the trial, to obtain a reversal of his conviction and sentence.
 

 The record discloses, as we appreciate it, that the minor child in question was born to affiant, Ethel Lee Bolden, while she was the lawful wife of one Leonard Bold-en. Further, it appears that the husband has not disputed the legitimacy of the child and that the time prescribed by law for its contestation has expired.
 

 The position of the mother in making the affidavit, however, was that the child’s father is Shep Randall, the defendant, and not Leonard Bolden, her husband. And the state, in this prosecution based on the affidavit, offered evidence to establish defendant’s paternity. To the evidence defense counsel objected, urging that under the circumstances of this case there is a conclusive presumption that the child was born of the mother’s marriage to Leonard Bolden and, hence, that he is its father. The court overruled the objection, permitting the introduction of the evidence, and to the ruling the single bill of exceptions now under consideration was reserved.
 

 Without the existence of the provisions of Act 164 of 1950 there could be no doubt that the challenged evidence offered by the state was inadmissible, Leonard Bolden (the legal husband of the minor’s mother) having failed to timely contest the child’s legitimacy. According to Civil Code, Article 184, “The law considers the husband of the mother as the father of all children conceived during the marriage.” In certain instances the husband is permitted to prove that he is not the father of such child. Civil Code, Article 185 et seq. But even in such instances the contestation must occur within' the prescribed delay, otherwise it is barred. Civil Code, Article 191.
 

 In interpreting these codal provisions this court has held on numerous occasions that the right to contest the legitimacy of a child born during marriage is strictly personal to the husband and can be exer
 
 *583
 
 cised by him only during a fixed period (with the right reserved to his heirs in the event of his death within the delay). When he fails to institute timely the disavowal action such right is extinguished; it can subsequently be exercised by no one; and the presumption of his paternity is absolute. Eloi v. Mader, 1 Rob. 581; Dejol v. Johnson, 12 La.Ann. 853; Succession of Saloy, 44 La.Ann. 433, 10 So. 872; Ezidore v. Cureau’s Heirs, 113 La. 839, 37 So. 773; Kuhlman v. Kuhlman, 137 La. 263, 68 So. 604; Succession of Flynn, 161 La. 707, 109 So. 395; Beard v. Vincent, 174 La. 869, 141 So. 862; Evans v. Roberson, 176 La. 280, 145 So. 539; Smith v. Smith, 214 La. 881, 39 So.2d 162.
 

 The state gives recognition to the discussed codal articles and the settled jurisprudence of this court interpreting them. But it calls attention to the specific provisions of Act 164 of 1950 (above quoted), under which this prosecution is conducted, particularly the one which directs the court to admit proof of paternity or maternity, or both, solely for the purpose of determining the obligation to support. Then it contends that if there is a conflict between the articles of the Civil Code and such statute, the latter, being the latest expression of the Legislature, supersedes or repeals the former.
 

 This contention was maintained by the Juvenile Court, the judge observing, in making the complained of ruling, that “this provision, in the opinion of the Court, has the effect of repealing at least in part Article 184 of the Revised Civil Code.”
 

 Admittedly the statute does not expressly repeal the mentioned codal provisions; hence, the question is whether or not it repeals them by implication. In determining this question we must keep in mind those well established principles of law, reiterated in State v. Standard Oil Company of Louisiana, 188 La. 978, 178 So. 601, 626, “ * * * that ‘repeals by implication are not favored and will not be indulged if there is any other reasonable construction ;***’*** that prior laws are repealed by subsequent laws only in case of positive enactment or clear repugnancy * * *; that nothing short of irreconcilable conflict between two statutes -works a repeal by implication * * *; that where a statute is ambiguous and susceptible of two constructions, the courts will give that construction which best comports with the ■ principles of reason, justice, and convenience, for it is to be presumed that the Legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences. * * * ” See also Mouledoux v. Maestri, 197 La. 525, 2 So.2d 11.
 

 When analyzing the provisions of the instant statute it is noticed that no independent definition is given of a legitimate or an illegitimate child as referred to therein. Apparently applicable, therefore, is the generally accepted definition that a legiti
 
 *585
 
 mate child is one born during the marriage and who is either actually or presumed to be the offspring of the husband, Civil Code, Articles 179 and 184; and that an illegitimate child is born out of marriage. Civil Code, Article 180. Of course, the statute contains the recitation (relied on herein by the state) that “Solely for the purpose of determining the obligation to support, the court shall admit proof of paternity or maternity, or both.” But by the phrase “admit proof of paternity” the Legislature might well have intended only the introduction of evidence in the case of a legitimate child to prove an accused’s marriage to the child’s mother and his failure to disavow legitimacy timely; and in the case of an illegitimate child to establish that the child’s mother was unmarried and that the accused was responsible for its birth.
 

 To us this appears to be the proper interpretation of the statutory provisions. In the first place there is nothing to indicate an intention to repeal the discussed codal articles with the consequent destruction of the established conclusive presumption of legitimacy. If such were intended the Legislature very easily could have added that any presumption of paternity heretofore established by law shall not apply. Secondly, the above announced construction best comports to reason and justice. As was appropriately said in the leading case of Succession of Saloy, supra, with respect to a disputing of the legitimacy of a child born during marriage, “Where, aware of the circumstances under which he might have exercised the right of repudiation, the husband, who is the sovereign arbiter of his honor, fails to do so, the door is forever closed, and no one can afterwards assert a right strictly personal to him. Permitting such thing would be to strike a heavy blow at the sacredness of family ties, keep the honor of the wife and of the children in a condition of constant trepidation, and allow the foundation of society to be at all times exposed to tottering and upturning. Status hominum in perpetua incertitudine fluctuaret. The sanctity with which the law; surrounds marital relations and'the reputation and good fame of the spouse and of the children born during their marriage is of such inviolability that the mother and the children can never brand themselves with declarations of adultery, illegitimacy, and bastardy, and their character is not permitted lightly to be thus aspersed, however true in themselves the stern and odious facts may unfortunately be.” [44 La. Ann. 433, 10 So. 876.]
 

 An unqualified destruction of the established conclusive presumption, on the other hand, might lead to injustice, oppression and absurd consequences. The wife in non-support cases (if not in all cases involving the paternity of the child born during her marriage) would carry the burden of proving that her husband is the actual father of her child.
 

 
 *587
 
 By giving Act 164 of 1950 the construction that we do, there exists no conflict between it and the articles of the Civil Code, particularly Article 184. And they being reconcilable, the former does
 
 not
 
 repeal by implication the latter. From which it follows that such statute, under the circumstances of this case, is inoperative as to the defendant; and the evidence offered under its authority should have been excluded.
 

 For the reasons assigned the conviction and sentence are set aside and the defendant is ordered discharged.
 

 McCALER, J.,. concurs in the decree.