154 So.2d 103 (1963)
Abraham L. BURRELL
v.
Nona Mae Brown Daniel BURRELL.
No. 5865.
Court of Appeal of Louisiana, First Circuit.
June 3, 1963.
*104 Cobb & Brewer, by Ralph Brewer, Baton Rouge, for appellant.
White & May, by Hamlet D. May, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
Plaintiff, Abraham L. Burrell, instituted this action to annual a "marriage ceremony" entered into with defendant, Nona Mae Brown Daniel, on March 18, 1960, said marriage being allegedly invalid by virtue of defendant's former marriage to one Ovie Harris Daniel from whom defendant was never divorced. By way of answer and reconventional demand, defendant asserted the validity of the marriage and requested alimony for three children, issue of her relationship with plaintiff, namely, Abraham Burrell, Jr., born September 20, 1951, Dorothy Mae Burrell born March 22, 1953, and Alvin Duke Burrell, born October 12, 1954. In the further alternative, defendant prayed that in the event her "marriage" to plaintiff be decreed neither lawful nor putative, plaintiff nevertheless be declared the natural father of the aforesaid children and condemned to pay alimony for their support and maintenance.
The trial court rendered judgment in favor of plaintiff "declaring the marriage ceremony performed in Orleans Parish, Louisiana, March 18, 1960, between petitioner and Nona Mae Brown to be null, void and of no force and effect". Defendant's reconventional demand for maintenance and support of the three children was rejected and from said adverse judgment defendant has appealed.
The facts giving rise to this action are not in dispute between the parties and may be briefly summarized as follows: Appellant was lawfully married to one Ovie Harris Daniel on June 19, 1946, in East Baton Rouge Parish. On an undisclosed date in 1950, defendant and her said husband, Ovie Harris Daniel, became estranged and during said same year appellant and appellee commenced living together, holding themselves out as man and wife. In 1951, appellant, to the knowledge and with the assistance of appellee, instituted action for divorce against her said husband but the matter was never prosecuted to final judgment and no decree of divorce or separation was ever rendered therein. From the commencement of their relationship in 1950, appellant and appellee lived together as man and wife in the Parish of East Baton Rouge and on March 18, 1960, said parties entered into a marriage ceremony in Orleans Parish, notwithstanding defendant's marriage to Daniel had never been dissolved by divorce or otherwise. Of the aforesaid union between appellant and appellee the three hereinabove named children were born, their respective births being recorded and registered as though they were issue of a lawful marriage between plaintiff and defendant. During the time plaintiff and defendant *105 lived together openly as man and wife, Ovie Harris Daniel, appellant's lawful husband, resided in the City of Baton Rouge and visited in the home maintained by appellant and appellee. It further appears appellant's two children by her marriage with Daniel lived with appellant in the home occupied by appellant and appellee together with the children of the second union. It also appears appellee and Daniel saw each other on numerous occasions. The record establishes beyond doubt that both appellant and appellee were fully aware appellant's marriage to Daniel had not been legally dissolved when appellant and appellee entered into the marriage contract of March 18, 1960.
Learned counsel for appellant maintains the trial court erred (1) in granting judgment annulling "the marriage ceremony" between the parties at bar because our law makes no provision for such a decree but permits only rendition of judgments "annulling marriages"; (2) permitting plaintiff to maintain the present action considering the right to annul a bigamous marriage is, by virtue of Article 116 LSA-C.C., limited and restricted to the spouse of the prior marriage aggrieved thereby; (3) declining to hold that plaintiff, by entering into a ceremony of marriage with defendant legitimated the three children of the union between the parties before the court and is therefore precluded from taking any action to bastardize his own legal issue; and (4) rejecting appellant's contention that by virtue of plaintiff's relationship with and marriage to defendant, and his acknowledgment of the children involved, plaintiff should be decreed the natural father of said minors and, as such, condemned to pay the support due by a parent to his natural children.
We find no merit in appellant's contention a bigamous marriage may be annulled only upon application of the spouse of the former marriage prejudiced thereby. LSA-C.C. Article 90, found in Chapter 2, Marriages, provides in essence the law considers marriage in no other view except that of a civil contract and sanctions all marriages contracted by parties willing to contract, able to contract and who do contract marriage pursuant to the formalities and solemnities prescribed by law. Article 113 LSA-C.C., Chapter 4, Marriages, expressly provides all marriages contracted under the incapacities enumerated in Chapter 2, (including Article 90 LSA-C.C.) may be impeached either by the married persons themselves or by any interested party. It is clear that in the case at bar the parties were aware of their inability to contract marriage considering the record clearly shows both plaintiff and defendant were fully cognizant of appellant's prior undissolved marriage. Under circumstances identical to those herein involved, the "wife" was held entitled to judgment declaring the nullity of such a marriage in Mounier v. Coutejean, 45 La.Ann. 419, 12 So. 623.
Although esteemed counsel for appellant forcefully maintains Article 116 LSA-C.C. grants the right to annul a bigamous marriage only to the spouse of the prior marriage prejudiced thereby, able counsel cites no authority in support of such position and our own research has failed to disclose such precedent. Granted, the Article gives the prejudiced spouse of a prior marriage the right to sue to annul a bigamous second marriage of his marital partner, we detect no language therein indicative of legislative intention to restrict such action solely to such prejudiced spouse. Nor do we detect in the cited article any provision calculated to restrict the provisions of LSA-C.C. Article 113 which grants the married persons themselves and any interested party the right to impeach a marriage contracted in violation of law.
Appellant's contention the law permits of no decree "annulling the marriage ceremony" is begging the question within the literal meaning of the phrase considering the status of legitimate marital relationship is subject to the indispensable *106 prerequisite of a marriage ceremony entered into by persons legally capable of contracting marriage. Annullment of the ceremony, for cause shown herein, namely, both parties' awareness of a previous legal marriage of one of the contracting parties, renders such rites absolutely and totally inoperative and ineffective insofar as concerns the parties thereto. Such a ceremony is void ab initio and produces no legal effects as to either party. Neither does it produce any legal effects as regards any issue of such a union. Annullment of such a "ceremony of marriage" is merely judicial determination and pronouncement of the legal inefficacy of the purported ceremony of marriage; it constitutes simply a formal declaration of the nullity of an apparently valid civil contract and precise declaration of its invalidity from its inception. It follows that the judgment rendered below nullified and forever voided and precluded any presumption of validity of the marriage herein assailed.
The contention of esteemed counsel for appellant that the marriage ceremony performed between the parties at bar constitutes the children in question legal issue of plaintiff and defendant thereby rendering appellant liable for their support as their legitimate father is predicated upon two premises. First, it is contended the marriage itself was never annulled since the judgment of the trial court did not annul the marriage but merely the ceremony of marriage. From this counsel argues the marriage was never dissolved and is therefore still in existence, consequently, children born of the marriage are the legitimate offspring of the parties to the marriage. Secondly, it is contended plaintiff's admitted acknowledgment of the children by registering their births in his name and openly living with defendant as man and wife constituted acknowledgment within the meaning and contemplation of Articles 198 and 199 LSA-C.C. so that the marriage performed subsequent to their birth legitimated them making plaintiff liable for their support as their lawful father.
We have hereinbefore disposed of the contention the decree of the trial court was without legal effect because it assertedly did not dissolve the marriage itself but merely the marriage ceremony.
The marriage with which we are herein concerned is patently a bigamous marriage admittedly contracted by parties both of whom were fully aware and cognizant of the impediment which barred the reputed wife from entering into a binding contract of marriage. Under such circumstances the marriage was an absolute nullity producing no civil effects with respect to either the parties thereto or issue thereof. LSA-C.C. Articles 117 and 118; Succession of Navarro, 24 La.Ann. 298; Succession of Virgin, 24 La.Ann. 485. The marriage between plaintiff and defendant being an absolute nullity producing no civil effect whatsoever, it follows that at the time of conception and birth of the children in question, appellant was the lawful wife of Ovie Harris Daniel considering appellant's admission her marriage to Daniel was never dissolved by divorce or otherwise.
It is the well settled jurisprudence of this state that the husband of the mother is considered the father of all children conceived during the marriage. LSA-C.C. Article 184. The husband cannot by alleging his natural impotence, disavow a child born during the marriage nor can he disown such child for cause of adultery, unless its birth has been concealed from him. LSA-C.C. Article 185.
Under certain circumstances the husband of the mother may contest paternity of children of the marriage. LSA-C.C. Article 191. The right to contest paternity, however, rests solely and exclusively in the husband and (in certain circumstances not pertaining to the case at bar) in the heirs of the husband. Ducasse's Heirs v. Ducasse, 120 La. 731, 45 So. 565. Children born during the existence of a lawful marriage are presumed legitimate issue of the marriage in the absence of the father's *107 action to disavow and said presumption cannot be destroyed by the declarations of the mother nor affected by statements in registration of the births of such children. Succession of Flynn, 161 La. 707, 109 So. 395.
On prior occasions the presumption of legitimacy accorded a child born during the existence of a marriage has been declared one of the strongest presumptions known to law. Indeed, the presumption is so strong and conclusive, even the mother is precluded from stigmatizing such a child as illegitimate by contending her lawful husband is not the child's father. In this regard we cite with approval the following language appearing in State v. Randall, 219 La. 578, 53 So.2d 689:
"In interpreting these codal provisions this court has held on numerous occasions that the right to contest the legitimacy of a child born during marriage is strictly personal to the husband and can be exercised by him only during a fixed period (with the right reserved to his heirs in the event of his death within the delay). When he fails to institute timely the disavowal action such right is extinguished; it can subsequently be exercised by no one; and the presumption of his paternity is absolute. Eloi v. Mader, 1 Rob. 581; Dejol v. Johnson, 12 La.Ann. 853; Succession of Saloy, 44 La.Ann. 433, 10 So. 872; Ezidore v. Cureau's Heirs, 113 La. 839, 37 So. 773; Kuhlman v. Kuhlman, 137 La. 263, 68 So. 604; Succession of Flynn, 161 La. 707, 109 So. 395; Beard v. Vincent, 174 La. 869, 141 So. 862; Evans v. Roberson, 176 La. 280, 145 So. 539; Smith v. Smith, 214 La. 881, 39 So.2d 162."
Admittedly the Randall case, supra, involved interpretation of the penal statute of this state defining the offense of criminal neglect of family. There appears, however, no valid reason for differentiation between the obligation of an alleged parent to support his children predicated upon whether the duty of maintenance is sought to be enforced by civil or penal procedural devices. The reasons for applying the well established presumption of legitimacy of children born during a lawful marriage are neither altered, changed or affected in the slightest degree by the means through which enforcement of the obligation of support is sought to be accomplished.
For reasons which should appear obvious, a child can have but one legitimate father. The presumption of legitimacy resulting from birth during the existence of a lawful marriage is absolute and irrefutable (excepting only the right of disavowal under proper circumstances) and precludes application of any rule, principle or theory which would admit of proof that such a child is the offspring of anyone other than the lawful husband of the mother which bore such child. It follows, therefore, that insofar as the present matter is concerned, the children in question are legally presumed to be issue of the undissolved marriage between appellant and Ovie Harris Daniel.
There remains to be disposed of the contention that the marriage between the parties at bar legitimated the children in question by virtue of the provisions of Articles 198 and 199 LSA-C.C. In support of this position learned counsel has cited Green v. Green, 14 La.App. 39, which we find clearly distinguishable from the case at bar. We note the Green case, supra, involved acknowledgment of a child born of an illicit relationship between plaintiff's mother and the defendant, the distinguishing feature being plaintiff's conception and birth at a time when plaintiff's mother was unmarried. In the case at bar all children involved were born during the existence of a lawful marriage of the mother consequently, for the reasons hereinabove set forth, they are conclusively presumed to be children of the lawful husband of the mother who bore them.
Articles 198 and 199 LSA-C.C., relied upon by astute counsel for appellant in *108 effect provide children born out of marriage, excepting those born of an incestuous union, are legitimated by the subsequent marriage of their parents and possess the same rights as though they were born during marriage. The Articles in question are clearly inapplicable to the case at bar considering they contemplate a lawful marriage contracted by parties able and willing to contract marriage or a putative marriage wherein one or both of the parties were in good faith resulting in civil effects flowing therefrom to the party or parties in good faith and the children born of the union.
The alleged marriage between the litigants at bar was neither lawful nor putative. Both parties to the marriage in question having been shown to be in bad faith, the purported marriage was absolutely null and void and produced no civil effects as to either the parties thereto or the issue thereof. LSA-C.C. Articles 117 and 118.
It follows that the utterly null and void marriage contracted by the parties at bar did not legitimate the children in question pursuant to the provisions of LSA-C.C. Articles 198 and 199.
It likewise follows the judgment of the trial court is correct in every respect and its affirmation is in order.
Affirmed.