The opinion of the court in the following case, was pronounced in June, 1841. An application appears to have been made for a re-hearing, which was refused. This circumstance may have prevented its publication in the last volume of the Reports, which was issued from the press on the 22d of March.

## PAUL ELOI *v.* EDMUND MADER.

One born in marriage will not be allowed to repudiate his own legitimacy. The right to repudiate or contest his legitimacy belongs to the father alone, and can only be exercised by him, or his heirs, within a fixed time, and in certain cases. If this right is expressly or tacitly renounced by the father, it is extinguished, and can never be exercised by any one.

The legitimacy of a child born in wedlock, cannot be affected by the declarations of the mother. She has no right to disown a child, for maternity is never uncertain; she can only contest its identity.

The right to disavow a child (*action en désaveu*) is entirely distinct and different from that, which all parties, whose interest may be affect. d, have to contest the legitimacy (*contestation de légitimité,*) of one in whose favor the legal presumption does not exist.

ᴀ APPEAL from the Commercial Court of New Orleans, *Watts*, J.

*Peyton*, and *I. W. Smith*, for the plaintiff, argued: 1. That the legitimacy of the plaintiff resulted from the marriage of his mother. Civ. Code, art. 203. Code Napoleon, art. 312. 2. No one but the husband of the mother can contest his legitimacy; the plaintiff cannot repudiate his own legitimacy. Civ. Code, arts. 210, 211. Code Napoleon, art. 316. 2 Toullier, Nos. 832—838. 3 Duranton, Nos. 64—79. 1 Œuvres de Cochin, p. 208. 2 Ib., 191, 192. *Tate* v. *Penne*, 7 Mart., N. S., 549. 3. The amendment was properly allowed. *Del Rio* v. *Gordon*, 14 La., 418. 1 Smith, 293. *Kingscote* v. *Bainsley*, Dick, 485. 4. The

heirs cannot be allowed to allege the infamy of their mother. 1 Proudhon, pp. 208, 220, p. 38, *et seq.* 3 Duranton, 350. Civ. Code, art. 233. ' Code Napoleon, art. 371.

*Roselius,* for the appellants. The legal heirs have a right to contest the claim, and, consequently, the legitimacy of the plaintiff. The amendment was improperly allowed. Civ. Code, art. 2270. Code of Pract., arts. 419, 420. 4 Mart., N. S., 518. 2 La., 508. *Shipman, &c.,* v. *Haynes et al.,* 15 La.

Morphy, J. The petitioner claims as the heir of Marie Fonteneau, his mother, one third of certain moneys and notes which were received by the defendant, his brother in law, from Jean Baptiste Eloi, who is alleged to be his father. Annexed to the petition is a certificate of baptism, in which the plaintiff is declared to be the legitimate son of J. B. Eloi and Marie Fonteneau, and a receipt of the defendant, stating that the money and notes delivered to him -by J. B. Eloi, are the aggregate amount of the shares of his three minor children, Paul, Augustin, and Evelina Eloi, in the estate of their mother, Marie Fonteneau, and promising to pay an interest of ten per cent per annum thereon. The answer admits the defendant's signature to the acknowledgment or receipt annexed to the petition, but avers that it was signed through error; that at the time that the acknowledgement was made, it was believed that the plaintiff was one of the legal heirs of the late Marie Fonteneau; that the defendant has since discovered that the plaintiff is not one of the said heirs, but, on the contrary, is an adulterous bastard; that at the time of the birth of the plaintiff, his father, Jean Baptiste Eloi, was not married to his mother, Marie Fonteneau; that the plaintiff is the issue of an illicit and adulterous intercourse between Jean Baptiste Eloi and Marie Fonteneau; that at the time of the conception and birth of the plaintiff, his mother was the legitimate wife of the late Joseph Smith, who did not die until the 23d of January, 1821; that after the death of Smith, her first husband, Marie Fonteneau married J. B. Eloi, the father of the plaintiff, which marriage could not legitimate the plaintiff; that shortly after their marriage, the father and mother of the plaintiff caused him to be baptized as their legitimate son, although they were well aware that such was not the fact; that this circumstance led the defendant and the legiti-

Eloi *v.* Mader.

mate heirs of Marie Fonteneau into error, and induced them to believe that the plaintiff was entitled to a share in said Marie Fonteneau's estate; that they discovered their error only about two months since, and that the legal heirs of the said Marie Fonteneau have since notified the defendant not to pay the proportion of the money and notes claimed by the plaintiff. The heirs of Marie Fonteneau intervened, made the same allegations as the defendant, and prayed that the funds in the hands of the defendant might be declared to be their exclusive property. There was a judgment below for the plaintiff; and the defendant and intervenors have appealed.

There is an admission on record that the mother of the plaintiff, Marie Fonteneau, was legally married to Joseph Smith about forty two years before that period; that said marriage was dissolved by the death of Smith, on the 23d of January, 1821; that the plaintiff was born on the 9th of February, 1820; and that his mother was married to Jean Baptiste Eloi, on the 5th of July, 1821.

After the trial below had commenced, the plaintiff's counsel moved the court to be allowed to strike out the averment in his petition that Jean Baptiste Eloi was the father of the petitioner, which averment he declared, under oath, had been made by him through error and an imperfect knowledge of the circumstances of the case, and that he had forgotten, until the petition was read that morning, that it contained such a statement. This motion was opposed, but the judge allowed the amendment to be made; whereupon, the defendant and intervenors took a bill of exceptions. Their counsel urges, that this amendment was illegally permitted, on two grounds, to wit: 1st, because it changed the substance of the action and issue joined; 2d, because a fact admitted in the plaintiff's petition, cannot be retracted or withdrawn, unless it is proved to have been made through an error of fact. If the mere question of practice, presented by this bill of exceptions, was to be considered, there would be much reason to doubt the correctness of the decision complained of, although, perhaps, even then the amendment might have been properly allowed, under the peculiar circumstances of this case. The subject matter of the averment was one of which neither the plaintiff, nor his counsel, could have any personal or positive knowledge, but from the view which we

have taken of the matter, it is immaterial whether the amendment be allowed or not. From the admissions in the record, it is clear, that the plaintiff was born in wedlock, and is the legitimate son of the late Joseph Smith, the first husband of his mother. From the moment of his birth, his condition was fixed; it was acquired to him under that great conservative and moral rule which has descended from the roman jurisprudence into ours, *pater is est quem nuptiæ demonstrant.* The declaration of his mother, in the certificate of his baptism, made long after the death of his father, that he was the son of J. B. Eloi, no doubt caused the error in which the plaintiff appears to have grown up, but it could not take away from him, nor affect in any way his condition or ligitimacy; there is no principle in the civil law better settled than this. Civil Code art. 203. 7 Mart. N. S. 548, *Tate* v. *Penne.* 2 Toullier, Nos. 858, 859. 11 D'Aguesseau, pp. 510, 516. Dig. L. 29, de probationibus et demonstrationibus. The declarations of the plaintiff himself cannot affect his condition, and are not to be listened to. It would be *contra bonos mores* to allow him to repudiate his own legitimacy. Having been born in marriage, he cannot be permitted, by any admission, to bastardize himself. Arrets de Sirey, 1820, 2, 261. The averment, therefore, in the plaintiff's petition, whether made through error, or not, cannot change or affect his condition, and must be disregarded. It can in no way assist the intervenors, in their unholy and flagitious efforts to prove that their mother had an adulterous intercourse with Jean Baptiste Eloi, during the lifetime of her first husband.

Our attention has been drawn to another opinion of the judge, rejecting documentary and oral evidence, offered by the intervenors, to prove that the plaintiff is not the legitimate son of Marie Fonteneau, their mother, and that they alone are her lawful heirs. We think that the judge decided correctly. The plaintiff having been born during the first marriage, Joseph Smith, his lawful father, could alone, under particular circumstances, dispute his legitimacy. Not having done so, although he survived the birth of the plaintiff much longer than the time prescribed by article 210 of the Civil Code, it is not competent either for the defendant, or the intervenors, to raise the contest now. The right to disavow and repudiate a child born under the protection of the legal presumption, *pater is*

Eloi *v.* Mader.

*est,* is peculiar to the father, and can be exercised only by him, or his heirs, within a given time, and in certain cases. If the father renounces the right expressly, or tacitly, it is extinguished, and can never more be exercised by any one. The mother has no right to disavow a child, because maternity is never uncertain ; she can only contest the identity of the child. This she has not done in the present case, having, on the contrary, acknowledged the plaintiff as her son. As to her heirs, the intervenors, they cannot have greater rights than she had herself. The right to disavow (*action en désaveu*), is entirely distinct and different from that, which all parties, whose interest may be affected, have to contest the legitimacy of one in whose favor the legal presumption does not exist (*contestation de légitimité*). 2 Toullier, Nos. 831—838. Boileux's Commentaries on articles 315, 316, and 317, pp. 233, 234, and 235. Rogron, Code Civil Expliqué, pp. 161 and 168.

*Judgment affirmed.*