### JENKINS et al. v. ÆTNA CASUALTY & SURETY CO. et al.
### No. 14966.

Court of Appeal of Louisiana. Orleans.
Jan. 7, 1935.

St. Clair Adams and St. Clair Adams, Jr., both of New Orleans, for appellants.

John T. Charbonnet, of New Orleans, for appellees and intervener.

JANVIER, Judge.

This is a proceeding under the State Workmen's Compensation Laws (Act No. 20 of 1914, as amended). The claimants, Amelia, Alberta, Henry, and Lucy Jenkins, alleging that Willie Jenkins, Jr., was their brother, assert that the death of their said brother resulted from an accidental injury sustain-

ed in the course of employment and which arose out of his work as an employee of defendant Crescent City Ice Manufacturing Company, Inc. The three first named claimants were minors at the time of the filing of this suit, and they are represented by their major sister, Lucy, who, as both parents are dead, has qualified as tutrix. The said Lucy Jenkins, after filing the petition as tutrix of the three minors, intervened in her own behalf and claimed compensation as a dependent sister.

Defendants are Crescent City Ice Manufacturing Company, Inc., the employer, and Ætna Life Insurance Company, the carrier of the employer's insurance. In the original petition, Ætna Casualty & Surety Company was also made defendant, but it is conceded that that corporation did not issue the policy and is in no way involved.

Defendants deny that the alleged accident occurred, and they contend that there is no proof thereof in the record. They also assert, and seek to prove that, although all of the claimants and the deceased, Willie Jenkins, Jr., are children of one mother, Charlotte Evans Jenkins, the wife of Willie Jenkins, Sr., the three minor children are her illegitimate children, and that Willie Jenkins, Sr., was not their father. As to Lucy, the major claimant who is admittedly the full and legitimate sister of the deceased, Willie Jenkins, Jr., they maintain that she is neither mentally nor physically incapacitated; that she is over the age of eighteen and was not actually dependent upon the deceased and, therefore, cannot claim compensation.

The amount of the weekly payment to which each claimant is entitled, if there is liability, appears not to be in dispute.

In the district court there was judgment in favor of Lucy Jenkins, as tutrix of the minors Alberta and Henry, in the sum of $3.27 per week each, for three hundred weeks and in favor of Lucy Jenkins, as tutrix of the minor Amelia, for $3.27 per week for twenty-five weeks. This award was limited to twenty-five weeks, since it was shown that Amelia reached the age of eighteen on October 7, 1933. The claim of Lucy Jenkins in her own behalf was rejected except to the extent of $9.80, that being the amount she was shown to have expended on the funeral of the deceased over and above the sum of $100 paid by defendants.

Defendants have appealed and Lucy Jenkins has also appealed from that part of the judgment which rejects her claim for compensation. As tutrix of the minor Amelia she has answered the appeal taken by defendants, contending that the said judgment in favor of Amelia should be amended, and that the period during which compensation should be paid should be extended from twenty-five weeks to three hundred weeks.

Unless the death resulted from the accident and the accident occurred during the course of and grew out of the employment, there can be no recovery by any one. Therefore, those questions of fact must first be investigated.

Willie Jenkins, Jr., was required by his employer, a retailer of ice, to deliver ice, and was furnished with an ice pick which is a sharp instrument used in breaking up large blocks of ice. It is contended that, while carrying on his shoulder a large block of ice, weighing one hundred pounds, and while walking across certain railroad tracks to make a delivery at the establishment of a customer, he permitted the block to slip, and that, as he attempted to catch it with the other hand to prevent its falling to the ground, he plunged into the muscle below the shoulder, on which the ice was carried the pick, which was in his other hand, and that later the wound thus caused became infected, his death subsequently resulting from blood poisoning.

That there was a wound which might have been so sustained and that blood poisoning which resulted from this wound was the cause of the death is testified to by a reputable and experienced physician and is not strenuously denied. Defendants declare, however, that there is no proof that the wound was sustained in the course of employment and was incidental thereto, as the claimants assert that it was. Only one person, Lawrence Carriere, claims to have seen the actual occurrence. He states that, though not employed by the defendant ice company, he helped Jenkins in delivering ice, and that Jenkins would sometimes give him cigarettes and would at other times pay him a few dollars.

He testified further that he saw Jenkins carrying the block of ice, and that he saw it slip, and also saw Jenkins accidentally plunge the ice pick into his arm in his attempt to catch the block of ice, and that he later saw blood coming from the wound which was thus caused.

Defendants attempt to cast doubt upon the truthfulness of Carriere and point to a written statement, which is said to have been made by him shortly after the alleged occurrence and to which statement he, being un-

able to read or write, had admittedly affixed his mark. This statement on which defendants rely to overcome the effect of Carriere's testimony suggests that he (Carriere) did not actually witness the accident, but obtained his information with regard to it from Jenkins after the occurrence.

In view of the fact that the said statement was not prepared by Carriere and because of his positive statement on the witness stand that he, himself, actually saw the accident, we feel that possibly his declarations made when the accident was being investigated may have been misunderstood by the investigator.

There are corroborating circumstances which tend to prove that the wound was sustained in the course of duty and, in the absence of any proof to the contrary, we feel that the safest course to pursue is to adopt as correct the finding of fact made by the trial court, since that finding is not manifestly erroneous.

We next consider the contention of defendants that the three minors are illegitimate children of the mother, Charlotte Evans Jenkins, and are not the children of Willie Jenkins, Sr., the father of Willie Jenkins, Jr., and are thus not entitled to compensation for the death of the said Willie Jenkins, Jr. This question arose when objection was made to evidence tendered by defendants for the purpose of showing this alleged illegitimacy. The objection was sustained and the evidence excluded.

In the original petition, on behalf of the three minors, appears the allegation that they are the legitimate children of Willie Jenkins, Sr., and of Charlotte Evans Jenkins, and there can be no doubt that, in order to recover, the claimants must show that they are the legitimate sisters and brother of the deceased employee.

The evidence shows that the said Willie Jenkins, Sr., and the said Charlotte Evans Jenkins were legally married, and that the marriage was never annulled, and that no divorce or legal separation was decreed, and that thus all three of the said children were born to the said mother during the existence of her marriage to Willie Jenkins, Sr. Therefore, on behalf of the three children, it is contended that, as the result of article 184 of the Civil Code, there is a presumption that Willie Jenkins, Sr., the husband of their mother, was their father, and that since the said Jenkins, during his lifetime, did not bring an action to disavow their paternity, and since more than two months have passed since the death of the said Jenkins without action by the heirs, that presumption has become conclusive and no one can be heard now to question their paternity.

It is conceded, as it must be, that, as against heirs of a deceased father, where no action to disavow paternity was brought by the deceased during his lifetime nor by the heirs during the two months following the death, the presumption of paternity becomes conclusive. Tate v. Penne, 7 Mart. (N. S.) 548; Eloi v. Mader, 1 Rob. 581, 38 Am. Dec. 192; Vernon v. Vernon's Heirs, 6 La. Ann. 242; Dejol v. Johnson, 12 La. Ann. 853; Succession of Saloy, 44 La. Ann. 433, 10 So. 872; McNeely v. McNeely, 47 La. Ann. 1321, 17 So. 928; Succession of Flynn, 161 La. 707, 109 So. 395; Succession of Braud, 170 La. 411, 127 So. 885; Beard v. Vincent, 174 La. 869, 141 So. 862; Evans v. Roberson, 176 La. 280, 145 So. 539; Succession of Barth, 178 La. 847, 152 So. 543, 91 A. L. R. 408; C. C. arts. 184–192; Tulane Law Review, volume V, page 449, "The Action en Desaveu." But it is argued that this rule of law has no application against a third person who is made defendant in a suit not growing out of succession proceedings, but whose liability vel non nevertheless depends upon the legitimacy of the person asserting the claim. In other words, defendants contend that they are liable to the three minors only if the three minors are the legitimate sisters and brother of the deceased, and that, though the failure of Willie Jenkins, Sr., to bring an action to disavow the paternity of the three children, should prevent heirs of the said Jenkins from denying his paternity, that failure has no effect so far as defendants are concerned, since they are not heirs of Willie Jenkins, Sr., but are third parties, and since the claim does not involve the estate of the said Jenkins, but arises under the compensation laws, and that no rule of law relieves the said plaintiffs from the duty of proving paternity by evidence other than the presumption which results from the codal articles referred to.

The many cases which we have cited leave no room for doubt that, as against heirs, the presumption becomes conclusive and unalterable, and there are expressions in those cases which indicate very clearly that, though the question of the effect of the codal articles as against third persons was not, in any of them, involved, the result in each would have been the same had such a question been presented. We note particularly the following: "The right to disavow and repudiate a child born under the protection of the legal presumption, pater is est, is peculiar to the father,

220

and can be exercised only by him, or his heirs, within a given time, and in certain cases. If the father renounces the right expressly, or tacitly, it is extinguished, and can never more be exercised by any one. * * *" Eloi v. Mader, 1 Rob. 584, 38 Am. Dec. 192. And·not only do we find such view indicated in many of the cases cited, but we note that it is expressly stated in Ezidore v. Cureau's Heirs, 113 La. 839, 37 So. 773, 774, in which legitimate paternity was asserted on behalf of a plaintiff and as a necessary prerequisite to her claim, and not as a matter of defense, and in which also the claim did not grow out of succession proceedings, but in effect amounted to a money demand against a third person not interested in the estate of the deceased. There the facts were as follows:

Sidney Cureau had died. Ezidore held a mortgage which had been granted by Cureau. Eugenia Jackson Cureau, through her tutor, intervened in the foreclosure proceedings, alleged herself to be in necessitous circumstances, and, by third opposition, claimed the sum of $1,000 as a minor child's homestead, and asserted her right to this $1,000 out of the proceeds of the property and by priority over the rights of the seizing mortgage creditor. We now quote from the decision, and find that "for answer, after pleading the general issue, the seizing creditor specially denied the existence and identity of said minor, and that there was any issue of the marriage ·of Sidney Cureau and Eugenia Jackson, and also specially denied the alleged paternity of the intervener."

It is plain that there was thus raised the question of the paternity of Sidney Cureau, and it is also plain that it was raised by the minor who, in that proceeding, occupied the status of plaintiff, and thus bore the burden of proof, and that proof of paternity was an essential prerequisite to her claim for priority, and that the matter involved a third party not an heir. When the case was tried, evidence was produced showing that the minor had been born to the mother during the existence of the marriage between the mother and the alleged father. As soon as these facts appeared, the district court, holding that the failure of the father to bring an action en desaveu made the presumption of paternity absolute, ·excluded all evidence tendered to disprove the paternity of Sidney Cureau. In the ·opinion of ·the Supreme Court approving that action appears the following:

"While· the Code, in terms, bars only the husband and his heirs, after a certain delay, from questioning the legitimacy of the child born during marriage, this court has held that the right is personal to the husband, and, if he fails to exercise it, 'the door is forever closed, and no one can afterward assert a right strictly personal to him.' "

As we have stated, there, the presumption was held conclusive, even though the person who relied on the presumption·occupied the status of plaintiff and bore the burden of proving paternity. Note the following language: "Of course, the burden of proof is on her to prove such capacity, when specially denied."

The following language is most suggestive: "If the husband and his heirs cannot dispute the legitimacy of the plaintiff, for a stronger reason the door should be closed on third persons in actions for money or property. Otherwise the question of status fixed as to the family might be successively raised and litigated in a number of ordinary suits."

In the matter of Favre v. Celotex Co. (La. App.) 139 So. 904, a mother sought compensation for the death of her son. Defendant employer offered evidence tending to prove that the husband of the claimant could not have been the father of the deceased employee, and that, therefore, the said employee must have been an illegitimate son. This evidence was objected to, and on appeal the Court of Appeal for the First Circuit said: "We are of the opinion that the objection urged on the ground that the legitimacy of a child can only be put at issue by the father during his lifetime, and by his children within a specified time after his death, is amply supported by the authorities dealing with the subject under our law in Louisiana, and that the ruling of the district judge was proper and correct."

That court further said:

"Nowhere does. it appear among these various provisions of the Code that the mother or any one else enjoys the right to institute an action to disavow a child—'action en desaveu' as it is also referred to. In Succession of Saloy, 44 La. Ann. 433, 10 So. 872, 875, the Supreme Court states in very specific terms that it is an action exclusively personal to the husband, the right to exercise which falls only to his heirs under certain conditions. 'The action en desaveu,' we read in the opinion, 'belongs only to certain persons exactly determined; that is, the husband and his heirs. It belongs neither to the mother nor to her heirs.' The law makes the husband the sole judge of whether such action should be pursued 'with a reserve of the right to his heirs of doing so in the event of his death within the delay. He is the only one who,

perhaps, can know that he is not the father. Where, aware of the circumstances under which he might have exercised the right of repudiation, the husband, who is the sovereign arbiter of his honor, fails to do so, the door is forever closed, and no one can afterwards assert a right strictly personal to him.' The court in that case advanced the most cogent and potent reasons on which this rule of law, enacted in the interest of the sanctity of the marital relation, is based.

"Later decisions of the Supreme Court on the same subject have only served to strengthen the views expressed in the Saloy Succession Case. See McNeely v. McNeely, 47 La. Ann. 1324, 17 So. 928, Succession of Flynn, 161 La. 709, 109 So. 395. In Ezidore v. Cureau's Heirs, 113 La. 839, 37 So. 773, 775, the court said: 'We consider that the sole question of law in this case has been settled by our state jurisprudence, and that no useful purpose would be subserved by reviewing the French authorities on the subject. The rule in this state is founded on considerations of public policy, which forbids that the question of the legitimacy of a child conceived and born during marriage, and never disavowed by the father in the mode prescribed by law, be raised by any one after his death. The reasons for this rule were ably expressed by the late Chief Justice Bermudez in the Saloy Case, after a review of all the authorities, and are the same, whatever may be the form of litigation in which the question is raised.'

"Counsel for defendant attempts to differentiate the present case from the Saloy Case on the question of the burden of the proof placed on the respective parties plaintiff, but we are unable to carry the distinction to the point where it would have any effect on the ultimate ruling to be made on the issue involved. The question does not appear to us to be one involving the burden of proof, but rather the right on the part of any one except those especially authorized to raise the issue to offer any proof at all, and this, regardless of the form of litigation in which it is raised. The father, the only one authorized to do so, having never disavowed the child in this case, the law forbids that its legitimacy be raised by the mother or any one else."

We have quoted at length from Favre v. Celotex Co. because there seem to be presented therein the contentions which are here made by defendants and because we believe these contentions were very clearly expressed and discussed by our brothers of the First circuit. Furthermore, that the question which was there presented was the same

which is now before us is shown by the dissenting opinion rendered by one of the judges of that court. This dissent accentuates the point at issue and leaves no doubt that, when our Supreme Court refused to issue a writ of certiorari, it intended to set at rest the question which we are now urged to again consider.

Defendants point to Harris et al. v. Louisiana Oil Refining Corporation, 13 La. App. 416, 127 So. 40, as indicating that in a compensation suit evidence to disprove paternity may be received. It is true that in that case the court considered evidence concerning the paternity of the deceased, but we are unable to find from the reported decision that objection was made when the evidence was tendered and the conclusion reached of legitimate paternity was the conclusion which would have resulted had such evidence been excluded.

In Succession of Fletcher, 11 La. Ann. 59, counsel for defendants feel that they have found a case which authorizes the view that, though the presumption to which we refer is absolute when relied upon by the child as a defense, the rule is different where the child appears as a plaintiff and where as a necessary part of the claim of the plaintiff legitimacy must be proven.

This theory has been rendered impossible of acceptance by us by the many decisions of our Supreme Court to which we have referred. We point as typical of the language employed in those decisions to the following paragraph from Ezidore v. Cureau's Heirs, supra: "We consider that the sole question of law in this case has been settled by our state jurisprudence, and that no useful purpose would be subserved by reviewing the French authorities on the subject. The rule in this state is founded on considerations of public policy, which forbids that the question of the legitimacy of a child conceived and born during marriage, and never disavowed by the father in the mode prescribed by law, be raised by any one after his death. The reasons for this rule were ably expressed by the late Chief Justice Bermudez in the Saloy Case, after a review of all the authorities, and are the same, whatever may be the form of litigation in which the question is raised."

It is true that in Succession of Saloy, supra, there is language which might, if Succession of Fletcher, supra, be not carefully analysed, be interpreted as indicating that the presumption is conclusive where relied upon as a defense, but not necessarily so when relied upon as a part of the claim of plaintiff, but

a careful analysis of Succession of Fletcher shows plainly that neither that decision nor Succession of Saloy is authority for any such distinction.

In Succession of Fletcher the father had, by notarial act, acknowledged the child. The child attempted to exclude the state in the succession of the father, and relied upon the acknowledgment by the father. The court set forth the contention of the child as follows: "Marie Louise having exhibited the act in which she was described by Henry Fletcher as his natural daughter, maintains that her heirship is thereby established conclusively as against the State, and that neither the State nor the executor in possession of the property can be heard to show by any extraneous evidence the existence of facts which would cut her off from the inheritance."

The state contended that the child was an adulterous bastard, and that thus the acknowledgment was ineffective because of the provisions of article 204 of the Civil Code, then article 222, reading as follows: "Such acknowledgment shall not be made in favor of children whose parents were incapable of contracting marriage at the time of conception."

It was sought to exclude evidence of illegitimacy because it was claimed that there was a conclusive presumption of paternity. But there the child had not been born to the mother during the existence of a marriage with the alleged father and, therefore, there was no presumption of paternity. Since the child relied on the act of acknowledgment which could be overcome by proof of illegitimacy, and since there was proof of illegitimacy, the court held that the objections to the evidence were properly overruled. The presumption of paternity which results from article 184 of the Civil Code was not involved at all. There was no reason, therefore, for the court in Succession of Saloy to discuss Succession of Fletcher, as setting forth a possible distinction between the right of a plaintiff to rely on the presumption in asserting a claim and the right of a defendant to rely on it in defending it.

The rights which result to a child born during the existence of the marriage and the absence of right in third persons to contest the paternity of such child, where the presumption of paternity has become conclusive, must not be confused with the rights which exist in all persons interested to contest the legitimacy of children where there is no such presumption.

It is unquestionably true that, under the laws of this state, as it was, and is under the laws of our sister republic France, "the right to disavow (action en desaveu), is entirely distinct and different from that, which all parties, whose interest may be affected, have to contest the legitimacy of one in whose favor the legal presumption does not exist (contestation de legitimite)." Eloi v. Mader, supra. See, also, Dejol v. Johnson, supra; Evans v. Roberson, supra; McNeely v. McNeely, supra.

This right of a third person to contest the legitimacy of a child where interests of the third person are affected adversely, if the child is legitimate, also exists, provided there is not in favor of the child an absolute presumption of legitimate paternity.

The cases to which we have referred hold that, where any person desires to contest the legitimacy of a child, and where his interests are involved in doing so, he has the right to do so provided the child is not one born during the existence of a legitimate marriage, but that, if the status of such a child is involved, then the question cannot be raised except by the father during his life, or by the heirs within two months, and then only by an action brought for the particular purpose.

In McNeely v. McNeely, supra, our Supreme Court, after referring to the Code Civil Francais, article 314, said: "So, under that Code, as under ours, the action to disavow is essential."

We therefore conclude that the presumption that Willie Jenkins, Sr., was the father of the three minors is conclusive, and that the district court properly excluded evidence to the contrary.

The said three minors were the legitimate sisters and brother of the deceased employee and were entirely dependent upon him.

Defendants contend that the major sister, Lucy, is not entitled to any compensation payments at all, and that the payments due to Amelia were properly limited to twenty-five weeks, and they base this contention on section 8 of the Compensation Act, as amended by Act No. 85 of 1926 (page 118), in paragraph (F) of subd. 2 of which appears the following: "Where any minor dependent who is not mentally or physically incapable of wage earning, shall become eighteen years of age, payment of the proportion of compensation due such minor shall cease."

This language also appears in Act No. 242 of 1928. This paragraph standing alone

clearly shows the intention on the part of the framers to exclude from the benefits of the act any person of eighteen years of age or more, unless mentally or physically incapable of wage earning. Neither Lucy nor Amelia is physically or mentally incapable of wage earning, and counsel concede that that portion of the statute, set forth above, is clear and unambiguous, but they contend that that provision was contained in the original compensation act No. 20 of 1914 and has never been eliminated from any of the subsequent amendments, but that, when in 1926 the Legislature decided to set forth new and different rules with reference to dependents, it declared in clause (D) of section 8 of paragraph 2 of Act No. 85 of that year (page 117) that, except in certain specified classes—in no one of which are the present claimants —" * * * the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death. * * *"

Counsel contends that this language shows that the Legislature intended to abolish the former arbitrary age limit and to substitute therefor the more flexible provision that the question of dependency should be decided in each case on the facts of that case, and that this is inconsistent with the age limit regulation which has appealed from the beginning and which, so counsel argue, was inadvertently not eliminated from the act of 1926 nor from the act of 1928.

The argument is most interesting and seems to forcibly illustrate the difficulty with which courts are confronted as the result of carelessness in the preparation and consideration of legislative enactments.

The age limit provision is, however, very clear and unambiguous, and appears, not only in the statute from which it is claimed it should have been first eliminated, but also in the statute adopted at the following regular session of the Legislature. Under such circumstances we are not justified in disregarding the plain text of the law in an effort to discover the real intention of the lawmakers.

If the two provisions conflict, it is manifest that there is no ambiguity or uncertainty in the particular one which is here under attack. It follows that Amelia is entitled to compensation only until her eighteenth birthday.

It is further argued that the said provision has no application to Lucy because she was already over eighteen when her brother, the employee, died. This argument is based on the wording of that particular provision which states: "Where any minor dependent . * * * shall become eighteen years of age, * * *" the argument being that there is no provision that a dependent who is already eighteen years of age shall not be entitled to compensation. We think that this argument is specious, and to adopt it would produce a most inequitable, unexpected, and unintended result.

We are not satisfied that the evidence shows that the award to Lucy for incidental expenses should be increased over the amount awarded below.

It is ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, all costs to be paid by defendants.

Affirmed.