ROBERTSON, Justice:
On March 9, 1972, Huston Speight and his lessee, J. C. Searcy, Jr., filed an amended Bill of Complaint in the Chancery Court of the Second Judicial District of Jasper County, Mississippi, against Susie Wheeler, et al., to confirm the title of Huston Speight to an undivided i/£th interest in ISO acres of land (Tract 1) in Section 4, Township 1 North, Range 11 East, Second Judicial District of Jasper County, and to confirm the title of Huston Speight to an undivided 14th interest in 30 acres of land (Tract 2) in the same section, township and range.
On May 4, 1973, the chancellor signed a final decree dismissing the original and amended bills of complaint, sustaining the amended cross-bills, and quieting, confirming and validating the title of the defendants to the lands in dispute. The court found and adjudged that Huston Hosey (Speight) was not the legitimate son of Louis Hosey and, therefore, was not an heir of Calvin Hosey and Maggie Hosey, his alleged grandparents. The court also found that, even if Huston were an heir and a co-tenant, he had been ousted by virtue of a partition deed dated December 10, 1923, to J. W. Kuykendall, and adverse possession had run against him in favor of his co-tenants.
Calvin Hosey, the common ancestor under whom all parties claim, died intestate on April 4, 1922, vested with title to both Tracts 1 and 2 (180 acres of land) which was his homeplace. He left a widow, Maggie Hosey, and six living children: John B. Hosey, Willie E. Hosey, Annie Hosey (Bridges), Ida Hosey (McCullum), Essie Hosey (Bridges) and Susie Hosey (Wheeler). One son, Louis Hosey, predeceased his father, dying intestate on January 10, 1922, in New Orleans, Louisiana.
On May 21, 1921, Louis Hosey married Lillian Speight in New Orleans, Louisiana, A copy of the Marriage License and Certificate of Marriage, as recorded in the Office of Recorder of Births, Marriages and Deaths for the Parish of Orleans, was admitted into evidence as an exhibit at the trial. Louis Hosey was shown as being 25 years old at the time of the marriage. The Birth Certificate of Huston Hosey, also a matter of public record in Louisiana, was admitted as an exhibit. According to the Birth Certificate, Huston Hosey “lawful issue of Lewis Hosey” and Lillian Hosey, was born on October 26, 1921, at her residence, 3413 South Liberty Street, New Orleans, Louisiana.
A copy of the official death certificate, also a part of the public records of Louisiana, was admitted into evidence as an exhibit. This death record recited in part: “Louis Hosey (Col.) a native of Miss, aged 26 yrs. departed this life yesterday (10th of January 1922) at No. 3413 S. Liberty Street in this city. Cause of death Pellagra. Exhaustion. Certificate of Dr. C. H. D. Bowers. Deceased was married, a Laborer.”
According to these official records of Louisiana, Huston Hosey was born 158 days after the marriage of Louis Hosey and Lillian Speight, and was two and a half months old at the time of the death of his father, Louis Hosey. After the death of Louis, Lillian Hosey took her infant son to Panola, Alabama, where her folks lived.
On October 21, 1922, an Alabama marriage license was issued, which authorized any minister of the gospel or public official to celebrate the rites of matrimony between “Pres. Dancy” and “Lillian Hosey”. The certificate of Rev. John Dancy showed that the marriage ceremony between these parties was performed by him in Panola, Alabama, on October 29, 1922.
According to a Mississippi marriage license issued by the Circuit Clerk of Kem- *718 per County, Abraham Cherry and Lillian Speight were married on February 22, 1934 in Kemper County, Mississippi. The Certificate of Marriage was filed for record with the Circuit Clerk on February 24, 1934. Lillian and her third husband, Abraham Cherry, together with her minor son Huston, moved to Detroit, Michigan.
The deposition of Lillian Cherry of Detroit, Michigan, was introduced into evidence. She recounted her history of being born on August 2, 1898, in Panola, Alabama, of moving to New Orleans as a young girl, of meeting Louis Hosey who lived in the same neighborhood in New Orleans in 1920, of going with and dating Louis, and of marrying him on May 21, 1921. She testified that Huston Hosey was born on October 26, 1921, in New Orleans, and that Louis Hosey died on January 10, 1922, at their home.
Lillian testified that she knew nothing about Louis Hosey’s family in Mississippi, didn’t know where they lived and had no way of communicating with them after the death of her husband, Louis. She testified that Huston was her only child.
Huston Hosey (Speight) testified that he was 50 years old, lived in Detroit, Michigan, was born in New Orleans, Louisiana, went by the name of Huston Hosey until he was about six years old, used the name Huston Dancy and then Huston Cherry, but ended up going by the name of Huston Speight. He went in the army in 1942 under the name of Huston Speight, married as Huston Speight, bought his home in Detroit, Michigan, as Huston Speight, and has worked for Chrysler Corporation in Detroit for 28 years as Huston Speight. He testified that he knew nothing of his father’s family.
Appellants have assigned two errors:
“1. The Chancery Court erred in holding that Huston Hosey, who adopted the name Huston Speight, was not a legitimate son of Louis Hosey under the laws of the State of Louisiana.
“2. The Chancery Court erred in holding that certain heirs of Calvin Hos-ey and Maggie Hosey have effectuated an ouster against Huston Hosey as to his undivided interest in the lands in controversy.”
Articles 184, 186, 190 and 191, Section 1, Chapter 2, Volume 2, West’s Louisiana Statutes Annotated, Civil Code, are the pertinent Lousiana statutes on filiation and are, as follows:
Art. 184. The law considers the husband of the mother as the father of all children conceived during the marriage.
Art. 186. The child capable of living, which is born before the one hundred and eightieth day after the marriage; is not presumed to be the child of the husband, every child born alive more than six months after conception, is presumed to be capable of living.
Art. 190. The husband cannot contest the legitimacy of the child born previous to the one hundred and eightieth day of marriage, in the following cases:
1. If he was acquainted with the circumstances of his wife being pregnant previously to the marriage.
2. If he was present at the registering of the birth or baptism of his child and signed the same, or if not knowing how to sign, he put his ordinary mark to it, in presence of two witnesses.
Art. 191. In all the cases above enumerated, where the presumption of paternity ceased, the father, if he intends to dispute the legitimacy of the child, must do it within one month, if he be in the place where the child is born, or within two months after his return, if he be absent at that time, or within two months after the discovery of the fraud, if the birth of the child was concealed from him, or he shall be barred from making any objection to the legitimacy of such child. (Emphasis added).
*719 Since Huston Hosey (Speight) was born 158 days after the marriage of Louis Hos-ey and Lillian Speight, under Article 186, he “is not presumed to be the child of the husband.” However, under Article 190, Louis could not contest the legitimacy of Huston “if he was acquainted with the circumstances of his wife being pregnant previously to the marriage.” The record is silent on this, but, in any event, under Article 191,
“|~T]he father, if he intends to dispute the legitimacy of the child, must do it within one month, if he be in the place where the child is born, . . . ” (Emphasis added).
Louis was in the hospital in New Orleans when Huston was born at the family home, 3413 South Liberty Street, New Orleans, so Louis was “in the place where the child is born.” In addition to that, Louis returned to the family home, 3413 South Liberty Street, where Lillian and Huston were living, and died there on January 10, 1922. Although Louis lived 2% months after Huston’s birth, he never disputed Huston’s legitimacy.
In Jenkins v. Aetna Casualty & Surety Company, 158 So. 217 (La.Ct.App.1935), the Court of Appeal of Orleans Parish said:
“It is conceded, as it must be, that, as against heirs of a deceased father, where no action to disavow paternity was brought by the deceased during his lifetime nor by the heirs during the two months following the death, the presumption of paternity becomes conclusive.” (Citing 11 Louisiana cases previously decided]. 158 So. at 219. (Emphasis added).
It is far too late for the appellees to dispute Huston’s legitimacy; the presumption of his paternity has long since become conclusive. The chancery court erred in holding that Huston was not the legitimate son of Louis.
The appellees next contend that even if Huston were an heir of Calvin and Maggie Hosey, that he was ousted by partition proceedings filed on November 15, 1923, by Maggie Hosey, John Hosey and Annie Bridges (nee Annie Hosey), adults, and Ida Hosey, Essie Hosey and Susie Ho-sey, minors, by their mother and next friend, Maggie Hosey. In their Petition to Partite, these petitioners stated that they “are the sole and only owners as tenants in common, in fee simple” of the 180 acres of land in question, and they asked for a sale of this property rather than a partition in kind. Not knowing about Huston, no summons of any kind was issued for him, although he was a necessary party. Neither was there publication of summons for the unknown heirs of Calvin Hosey.
On November 19, 1923, the chancellor appointed T. Q. Brame, the chancery clerk, as special commissioner to sell this 180 acres of land, after posting notice in three public places for at least 10 days prior to the date of sale. T. Q. Brame reported the said sale as having been made on December 3, 1923, to J. W. Kuykendall for $1200. The decree confirming the sale was signed on December 8, 1923, and a deed executed to J. W. Kuykendall on December 10, 1923.
On December 12, 1923, by warranty deed J. W. Kuykendall conveyed these lands back to Maggie Hosey for a recited consideration of $1400 cash. J. W, Kuykendall never made an entry on the land, and Maggie Hosey and her children continued in the uninterrupted occupation and possession of these home lands.
Ida Hosey McCullum testified that Mr. Kuykendall was a friend and helped her mother, Maggie, straighten out the land so that it would be hers.
On January 15, 1924, Maggie Hosey borrowed $600 from the Federal Land Bank of New Orleans. Maggie and her minor daughters, with some help from John B. Hosey who had moved back on the home place, scratched out a bare living from these lands.
*720 On April 14, 1941, the heirs of Calvin Hosey (excluding Huston Hosey) executed a number of deeds in an attempt to divide the 180 acres into six 30-acre parcels. Each of the deeds recited: “We the heirs of Calvin Hosey, deceased” and éach of the deeds, which were signed by all except the grantee in that particular deed, recited that the grantors were conveying “all of our right, title, and interest”.
Huston Hosey Speight did not become 21 years of age until October 26, 1942. Inasmuch as all the heirs (except Huston) and except the grantee in that particular deed, signed every deed, Maggie and her heirs repudiated the partition sale of December 3, 1923, and elected not to claim under the partition decree.
We are of the opinion that the partition proceedings of December, 1923, did not constitute an ouster of Huston Hosey (Speight) because there was no notice of any kind to Huston Hosey Speight (a necessary party), no entry of any kind by Kuykendall, the purchaser, and no interruption in the occupation and possession of the home lands by Maggie Hosey and her children. They also repudiated the partition proceedings and elected not to depend on the partition when they executed and exchanged deeds on April 14, 1941. The facts of this particular case do not warrant the application of the doctrine of laches or estoppel.
In Nichols v. Gaddis and McLaurin, Inc., 222 Miss. 207, 75 So.2d 625 (1954), we said:
“Because of the mutuality of their interests, possession and obligations, the relationship between cotenants is confidential and fiduciary in nature. Each has a duty to sustain, or at least not to assail, the common interest, and to sustain and protect the common title. It is a relationship of trust and confidence between co-owners of property, 86 C.J.S., Tenancy in Common, § 17.
“. . . Because of the relationship between tenants in common, possession which in ordinary cases would constitute adverse possession is not sufficient where entry was made as a tenant in common.” 222 Miss. at 221, 75 So.2d at 629.

“We do not think that the mere recording alone of a fee simple deed by a co-tenant ‘imparts notice’ to other cotenants of an adverse claim to land by the grantee-cotenant, and do not think that ‘this is as effectual for setting the statute in motion as actual notice would have been’, as was held in Peeples [Peeples v. Boykin, 132 Miss. 359, 96 So. 177]. This ignores the nature of the relationship of tenants in common, and the fact that a tenant in common out of possession is entitled to assume that a cotenant in possession holds for all cotenants, until he is given knowledge to the contrary, or the equivalent thereof, which must be shown by clear and convincing evidence. As was said in Hulvey v. Hulvey, 92 Va. 182, 23 S.E. 233, 235 (1895). ‘No one is required to watch the clerk’s office to see that those in possession of property in privity with him or in subordination to his title are not acquiring rights adverse to him.’ ” 222 Miss. at 231, 75 So.2d at 633.
We have consistently followed Nichols v. Gaddis and McLaurin, Inc. (supra), in these cases: Johnstone v. Johnson, 248 So.2d 444 (Miss.1971); Quates v. Griffin, 239 So.2d 803 (Miss.1970); Gavin v. Hosey, 230 So.2d 570 (Miss.1970); Guiseppi v. Cozzani, 193 So.2d 549 (Miss.1966).
In Quates, on Petitions for Rehearing, we did modify the Nichols v. Gaddis and McLaurin, Inc. rule when we stated:
“To oust the cotenants not joining in the deed these factors must concur, (1) the execution of the deed purporting to convey the entire interest in fee simple to one then a stranger to the title, (2) *721 the recording of the deed, and (3) the entry of the grantee claiming the entire interest in the property.” 239 So.2d at 812. (Emphasis added).
None of these factors are present in the case at bar.
The judgment of the lower court must, therefore, be reversed and judgment rendered here for Huston Speight and his lessee, J. C. Searcy, Jr.
We affirm title in Huston Speight to an undivided i/^th interest in:
The East 30 acres of Southeast Quarter of Northwest Quarter;
The Southwest Quarter of Northeast Quarter;
The Northeast Quarter of Southwest Quarter; and
The Northwest Quarter of Southeast Quarter ;
all in section 4, Township 1 North, Range 11 East, Second Judicial District, Jasper County, Mississippi;
and an undivided Y^th interest in:
The West 10 acres of Southeast Quarter of Northwest Quarter;
The East Half of Southwest Quarter of Northwest Quarter;
all in Section 4, Township 1 North, Range 11 East, Second Judicial District, Jasper County, Mississippi;
subject to that certain oil, gas and mineral lease executed by Huston Speight, as lessor, to J. C. Searcy, Jr., as lessee.
This cause is remanded for an accounting by the defendants and for an adjustment of the equities consistent with this opinion.
Reversed and judgment here for appellants, and remanded for an accounting.
GILLESPIE, C. J., and SMITH, WALKER and BROOM, JJ., concur.