# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00215-COA

**PATRICIA L. ROGERS EVANS**                                                  **APPELLANT**

**v.**

**UNKNOWN HEIRS OF DAN A. ARBUTHNOT,**                          **APPELLEES**
**DECEASED, KEVIN SMITH, KARL HOLLIDAY,**
**MARK HOLLIDAY, ROY LEE, AND MARYDIA**
**BRECKINRIDGE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/02/2022 |
| TRIAL JUDGE: | HON. E. VINCENT DAVIS |
| COURT FROM WHICH APPEALED: | WILKINSON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | SHELDON G. ALSTON MARGARET K. DUFF |
| ATTORNEY FOR APPELLEES: | WAYNE DOWDY |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED, RENDERED AND REMANDED - 10/24/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., McCARTY AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1. On February 19, 2021, Patricia L. Rogers Evans (Evans) filed her "Sworn Complaint for Determination of Heirship of Dan A. Arbuthnot and Jessie Arbuthnot, to Confirm and Quiet Title and to Remove Clouds on Title, and in the alternative Adverse Possession." Answers were filed by Steven Davis, Kevin Smith, and Marydia Breckinridge.[1] The matter

---

[1] Smith and Breckinridge were represented by Wayne Dowdy. The record reflects that Davis claimed an interest in the subject property by a tax deed. Any interest Davis had in the subject property was not addressed during trial or in the chancellor's order. At oral argument, counsel advised that the tax deed was filed in this case in error and did not

was tried on October 21, 2021, and the court, having heard the evidence presented by the parties, took the matter under advisement. On February 2, 2022, an "Order Granting Motion to Dismiss" was entered dismissing Evans' complaint. Evans appeals.

## FACTS AND PROCEDURAL HISTORY

¶2. In her complaint, Evans sought to have the court confirm her title to a certain 15.8-acre tract of land in Wilkinson County, Mississippi (the property). Evans claimed fee simple title to the property as the grantee in a warranty deed executed by Shavone Wells, grantor, on June 6, 2006, and recorded that same day in the county's Land Deed Book No. 12-P, Page 604.[2] In the alternative, Evans claimed ownership by her adverse possession of the property since June 6, 2006. She filed the instant complaint to confirm her title.

¶3. As set forth in the deraignment of title attached to Evans' complaint, on June 7, 1985, Dan A. Arbuthnot acquired sole title to the property by quitclaim deed from the other heirs at law of James Arbuthnot, who died intestate on October 10, 1979. Dan held title to the property until September 7, 2002, when he died intestate. Again, according to the complaint, Dan's wife Jessie Arbuthnot and his daughter Shavone Arbuthnot Wells were his sole heirs at law. Jessie died intestate on December 16, 2005, leaving Shavone as her only heir. There

concern the property that is the subject of this appeal.

[2] The subject property had previously been conveyed by Shavone to herself by a quitclaim deed dated February 8, 2006, wherein Shavone declared herself to be the sole and only heir at law of Dan A. Arbuthnot and Jessie Arbuthnot. Years later, well after 2016, while in the process of selling the property, Evans became aware of others who claimed to be heirs of Dan and Jessie, resulting in her filing the complaint to confirm title.

is no evidence that an estate was opened for either Dan A. Arbuthnot or Jessie Arbuthnot. Further, there is no record that prior to this proceeding, any effort had been made to identify the heirs of Dan A. Arbuthnot or Jessie Arbuthnot, by heirship affidavit or otherwise.

¶4.     Marydia Breckinridge and Kevin Smith filed their answer to Evans' complaint denying that Evans was entitled to the relief requested. The trial was held on October 21, 2021, at which time Evans' counsel announced that Evans would not pursue an heirship determination as requested in her complaint. Evans elected to proceed only on the claim of adverse possession. Evans and Clyde Brown (caretaker and employee of Evans) testified during Evans' case-in-chief.

¶5.     Evans testified that she and/or her father had owned land adjacent to the subject property since 1983. A portion of her property had been used as a "high fence white-tail deer habitat," and since 2002, she had operated it as a business and sold whitetail deer hunts. To access this portion of her property, Evans testified that they had always used a road that crossed the subject property. According to Evans, while Jessie and Shavone were living on the subject property, she told Shavone that if they ever wished to sell the property, she would like to buy it. Evans testified this would give her access to the 500 acres she already owned "behind" the subject property.

¶6.     After Jessie's death, believing that Shavone was the sole heir to the property, Evans purchased the subject property from Shavone for $38,000 in exchange for the warranty deed described above. After the purchase, during 2006, Evans gave the Arbuthnot relatives the

3

opportunity to collect any of Jessie's possessions that remained in the house on the property. Later, after the house had been vandalized, Evans had the house demolished. She continued to use the road to access her other property. Evans said, "I just put up a four or five foot wire fence to kind of indicate that it was private property. I also put up gates and locked them." She testified that she placed double gates with locks on the only entrance and exit to the property.

¶7.    Evans testified that she is the only person who has maintained the subject property. She keeps the grass cut, the road in passable condition, and the fence in good repair. She had a smaller house on the property removed. She paid the taxes on the property. She testified that her ownership of the subject property, since 2006, had been "open and notorious and clear to everyone." She advised the court that Clyde Brown helped her maintain the property and that she and Brown have the only keys to the gates. Evans stated that she allows her sons to access the property and that she allows hunters to enter the property. She said that she had "co-op employees come bring feed and seed and sometimes I had people coming in with their equipment to do land work." She also testified she had done some timber thinning on the property. According to Evans, no one has ever questioned her control of the property.

¶8.    Clyde Edward Brown testified and confirmed that he maintains Evans' property. He keeps the front cut and takes care of the deer and the fences. He keeps the gates locked and testified that no one ever approached him while he was working on the subject property and represented that they owned the property. Evans pays him and no one has ever questioned

4

what he was doing on the property.

¶9. At the conclusion of Evans' case-in-chief, the defendants moved to dismiss the complaint for Evans' failure to plead and prove ouster of the co-tenants. The chancellor took the motion under advisement. The defense went forward, and Smith, Karl Holliday, and Mark Holliday testified for the defendants.[3] The defendants renewed their motion to dismiss after Evans testified in rebuttal. The chancellor again took the motion under advisement and requested that both parties submit briefs on the issue.

¶10. On February 2, 2022, the chancellor issued his order finding that Evans and the defendants were co-tenants. The chancellor then found that because Evans failed to plead and prove the required element of ouster of her co-tenants, she had failed to establish her claim of adverse possession and that the defendants' motion to dismiss should be granted. Evans appealed.

## STANDARD OF REVIEW

¶11. In *Clark v. Wesley*, 305 So. 3d 182, 187-88 (¶¶16-20) (Miss. Ct. App. 2020), this Court explained:

> Mississippi Rule of Civil Procedure 41(b) governs involuntary dismissals and "applies in actions tried by the court without a jury, where the judge is also the fact-finder." *All Types Truck Sales Inc. v. Carter & Mullings Inc.*, 178 So. 3d 755, 758 (¶13) (Miss. Ct. App. 2012) (internal quotation marks omitted). In relevant part, Rule 41(b) provides that "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the

---

[3] Mark and Karl Holliday claim to be heirs of the property through their deceased mother, Lovie Keppard, who was Dan and Jessie Arbuthnot's natural daughter.

5

defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

. . . .

"In reviewing a trial court's grant or denial of a Rule 41(b) motion for involuntary dismissal, we apply the substantial evidence/manifest error standards." *Gulfport-Biloxi Reg'l Airport Auth.* [*v. Montclair Travel Agency Inc.*], 937 So. 2d [1000,] 1005 (¶13) [(Miss. Ct. App. 2006)]. "[A] chancellor, being the only one to hear the testimony of witnesses and observe their demeanor, is in the best position to judge their credibility." *Hunt v. Hunt*, 289 So. 3d 313, 318 (¶16) (Miss. Ct. App. 2019). Accordingly, "we defer to the trial court's findings of fact but review de novo legal conclusions." *Aronson v. Univ. of Miss.*, 828 So. 2d 752, 755 (¶12) (Miss. 2002).

## ANALYSIS

### I.     Adverse Possession

¶12.    Evans had the burden to prove the elements of adverse possession by clear and convincing evidence, as stated in *Williams v. Estate of Williams ex rel. Fairley*, 952 So. 2d 950, 953 (¶8) (Miss. Ct. App. 2006):

> Robert asserts that the chancellor erred in finding that John adversely possessed the land. As the party who claimed adverse possession, John's estate bore the burden of proving it by clear and convincing evidence. *Bacot* [*v. Duby*], 724 So. 2d [410,] 419 (¶46) [(Miss. Ct. App. 1998)]. John's estate had to prove that his possession or occupancy of the property was (1) under claim of ownership, (2) actual or hostile, (3) open, notorious, and visible, (4) continuous and uninterrupted for ten years, (5) exclusive, and (6) peaceful. *Id*. **There is an additional element in order to adversely possess the interests of co-tenants.** *Id*. at 419 (¶47). **His estate must also prove ouster.** *Jordon v. Warren*, 602 So. 2d 809, 814-15 (Miss. 1992). **Ouster is unequivocal notice by one co-tenant that he intends to adversely possess the claims of his fellow co-tenants.** *Id*. at 815.

(Emphasis added).

¶13.    Evans contends that at the time Shavone conveyed the subject property to her by the

6

warranty deed, Shavone represented that she was the sole heir at law of Dan and Jessie. However, uncontradicted testimony at trial causes one to doubt the truthfulness of that representation. Kevin Smith testified that Lovie Keppard (deceased), Denie Graham (deceased), and Roy Lee were natural children of Dan and Jessie. Both Keppard and Graham had surviving children, according to Smith. While Smith further testified that both he and Shavone were adopted, he did not know whether they had been *legally* adopted. Based upon the testimony of Smith and the Holliday brothers, it is clear that Shavone was not the sole heir at law of Dan and Jessie.

¶14.    As stated earlier, Evans abandoned any effort to have the trial court determine heirship at trial. She argued that heirship did not matter because she adversely possessed the property to the exclusion of any and all other co-tenants, whomever they may be. Based upon the evidence at trial, the chancellor found that "[t]his case involves a dispute among co-tenants," and Evans does not challenge that finding on appeal. The chancellor's decision to grant the defendants' motion to dismiss was based upon his finding that Evans was not a "stranger to the title" and had not proved "ouster" of her co-tenants.

¶15.    The chancellor clearly relied on the opinion in a somewhat unusual case, *Quates v. Griffin*, 239 So. 2d 803 (Miss. 1970). In the chancellor's written order, between extensive cites from the *Quates* opinion, the chancellor found:

> Like in the case sub judice, Griffin obtain[ed] an interest in the property in dispute by a deed which falsely stated the grantors to be the sole heirs at law. Additionally, in the case sub judice the plaintiff Ms. Evans was not unfamiliar with the property or with Dan and Jessie Arbuthnot prior to acquiring an

7

interest from [Shavone] Arbuthnot Wells. Since 1995 the plaintiff has owned a substantial amount of land adjacent to the subject property and testified that she had been interested in acquiring the subject property. She knew some of the family and/or others in the rural community from whom she could have made inquiry. The plaintiff testified that she had been interested in purchasing the land and had been visiting with Mrs. Arbuthnot's daughter and some nieces and the Court therefore finds that she knew how to contact family members and make independent inquiry of other children and heirs.

(Footnote omitted). The chancellor's ruling is consistent with the original opinion in *Quates*. The facts, as set forth in the *Quates* opinion, are quite similar to the facts in this case and the chancellor's ruling is consistent to the court's holding in the original *Quates* opinion.

¶16.    However, the *Quates* case is unusual because although a petition for rehearing was denied and the original decision was allowed to stand on a 5-0 vote of the justices, a separate opinion was written on rehearing that, on a 3-2 vote, changed the law prospectively. This separate opinion provides, in part:

> We are of the opinion that some modification of *Nichols v. Gaddis*, *and McLaurin, Inc.*, [222 Miss. 207, 75 So. 2d 625 (1954),] is appropriate. It is overruled only as to that part of the opinion overruling *Peeples v. Boykin*, [132 Miss. 359, 96 So. 177 (1923)]. **We are of the opinion that in the interest of stability, justice and simplicity of the law in this area the rule should be, and is hereby declared to be, as follows**: Where one or more of several cotenants convey land by an instrument purporting to vest in the grantee the fee simple title to the entire property, and the grantee is not a cotenant at the time of the execution of the deed, and the grantee records his deed in the county where the land lies, and enters into possession asserting open and exclusive ownership thereof, the cotenants not participating in the conveyance are deemed to be ousted and on the termination of the statutory period, title by adverse possession becomes vested in the grantee. **In order for such deed to constitute an ouster as aforesaid, the grantee must have had no interest whatever in the land prior to the execution of the deed, either as a cotenant by deed or as a cotenant by inheritance**; nor is a quitclaim deed limiting the estate conveyed to 'all my right, title and interest' in the land

8

sufficient to set in motion the statute because it does not purport to convey the entire property. *Hurst v. J. M. Griffin & Sons, Inc.*, 46 So. 2d 440 (Miss. 1950).

> **To oust the cotenants not joining in the deed these factors must concur, (1) the execution of the deed purporting to convey the entire interest in fee simple to one then a stranger to the title, (2) the recording of the deed, and (3) the entry of the grantee claiming the entire interest in the property.**

*Quates*, 239 So. 2d at 811-12 (emphasis added). The rule announced by this separate opinion has been cited as authority by subsequent cases when dealing with the question of adverse possession by "a stranger to the title." *Walls v. Ivy*, 156 So. 3d 315, 317 (¶8) (Miss. Ct. App. 2010); *Buford v. Logue*, 832 So. 2d 594, 604 (¶29) (Miss. Ct. App. 2002); *Jordon v. Warren*, 602 So. 2d 809, 816 (Miss. 1992); *Key v. Wise*, 341 So. 2d 1326, 1327 (Miss. 1977); *Speight v. Wheeler*, 310 So. 2d 716, 720-21 (Miss. 1974); *Hardy v. Lynch*, 258 So. 2d 414, 415-16 (Miss. 1972); *Johnstone v. Johnson*, 248 So. 2d 444, 448 (Miss. 1971).

¶17. The important distinction is whether the person claiming the land by adverse possession was a "stranger to the title" at the time of the purported conveyance of fee simple title to the property by one of the co-tenants. In the present case, Evans had no interest in the property, either by deed or inheritance, at the time she received the warranty deed from Shavone, purporting to convey fee simple title to Evans. The deed was recorded in the public records of Wilkinson County, Mississippi, where the property is located. Because she was a "stranger to the title," the recording of the deed was sufficient to constitute an ouster of all co-tenants. *Quates*, 239 So. 2d at 811-12. Thereafter, Evans made entry upon the land and, according to the evidence produced at trial, rightfully claimed sole ownership of the property.

9

Therefore, we find that Evans' proof was sufficient to claim title to the subject property by adverse possession.

## II. Joinder

¶18. The chancellor concluded his order by quoting a source that states, "[A] party who has ownership interest in land which is the subject of a dispute must be joined so that he can protect his interest." Pat H. Scanlon Sr. and John P. Scanlon, *Joinder Required*, *in* 1 Mississippi Civil Procedure § 9:15 (updated May 2023). While that is certainly true, there are occasions where certain parties simply cannot be identified by name and address. To that end, Mississippi Rule of Civil Procedure 4(a)(1)(C) provides for service by publication. Rule 4(c)(4)(D) provides:

> When unknown heirs are made parties defendant in any proceeding in the chancery court, upon affidavit that the names of such heirs are unknown, the plaintiff may have publication of summons for them and such proceedings shall be thereupon in all respects as are authorized in the case of a nonresident defendant. When the parties in interest are unknown, and affidavit of that fact be filed, they may be made parties by publication to them as unknown parties in interest.

¶19. In her complaint, Evans joined "any and all unknown heirs at law of Dan A. Arbuthnot, any and all unknown heirs of Jessie Arbuthnot, any and all unknown heirs of Sarah Arbuthnot, any and all unknown heirs of Denie K. Graham, and any and all persons or entities having or claiming any legal or equitable interest in the [subject] Property." Evans' complaint goes on to properly deraign title as required by Mississippi Code Annotated section 11-17-35 (Rev. 2019). A summons was issued for "[a]ll unknown and/or unfound

10

owners or parties in interest claiming any right, title or interest, legal or equitable, in and to the real property described below in Wilkinson County, Mississippi on February 26, 2021." The record reflects that the summons was duly published on March 4, March 11, and March 18, 2021, in accordance with Rule 4(c)(4)(A)-(B).

¶20. Evans followed the procedure for giving notice to unknown parties as provided by the Mississippi Rules of Civil Procedure, and as a result, we cannot agree that those parties were not properly joined.

## CONCLUSION

¶21. The chancellor erred by finding that Evans was not a stranger to the title to the subject property and that she had failed to prove ouster of any and all co-tenants having an interest in the subject property. We reverse the chancellor's order dismissing Evans' claim to the property by adverse possession. We render judgment in favor of Evans on her claim for confirmation of title to the property by adverse possession because she met all the elements required by the separate opinion in *Quates*, 239 So. 2d at 812. We remand to the chancery court for entry of an order confirming title as provided in this opinion.

¶22. **REVERSED, RENDERED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**

11